IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Richard Rose**, an individual, **Brionté McCorkle**, an individual, **Wanda Mosley**, an individual, and **James "Major" Woodall**, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>Defendant. | Case No.<br><br>_____<br><br><br><br><br>**Complaint** |

### Nature of the Case

1.    This is an action under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, challenging the at-large method of electing members of Georgia's Public Service Commission.

2.      The Public Service Commission dates back to 1879. Commissioners have been chosen by statewide election since 1906. Yet no African American has ever been elected to the Public Service Commission without having first been appointed by the governor. And even then, only one African American has ever served on the Commission.

3.      The plaintiffs are African-American voters, and they seek declaratory and injunctive relief prohibiting further use of the at-large method of election on the ground that it dilutes black voting strength in violation of Section 2.

## Jurisdiction and Venue

4.      This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 2201(a) and 52 U.S.C. § 10308(f).

5.      Venue is proper in this Court under 28 U.S.C. §§ 90(a)(2) and 1391(b).

## Parties

6.      Richard Rose is an African-American resident and registered voter in Fulton County, Georgia.

7.     Brionté McCorkle is an African-American resident and registered voter in Fulton County, Georgia.

8.     Wanda Mosley is an African-American resident and registered voter in Fulton County, Georgia.

9.     James "Major" Woodall is an African-American resident and registered voter in Fulton County, Georgia.

10.     Defendant Brad Raffensperger is the Secretary of State of the State of Georgia (hereinafter, the "Secretary").  He is the chief election official of the State of Georgia and is responsible for administering elections for members of the Public Service Commission. *See, e.g.*, O.C.G.A. §§ 21-2-50(a)(4), 21-2-154(a), 21-2-132(d)(2), 21-2-499(a), 21-2-502(c). He is sued in his official capacity only.

## Background

11.     The Georgia Public Service Commission consists of five members elected at-large by all Georgia voters in partisan elections to serve staggered six-year terms. Ga. const. art. IV, § 1, para. I; O.C.G.A. § 46-2-1.

12.     Although elected at large, members of the Public Service Commission are required to reside in one of five Public Service Commission Districts prescribed by statute. O.C.G.A. § 46-2-1.

13.     The jurisdiction, powers, and duties of the Public Service Commission are prescribed by state law, and they include broad governmental authority to supervise and regulate common carriers, railroads, and public utilities. O.C.G.A. § 46-2-1 *et seq.* Among many other duties, the Commission regulates the rates that Georgians may be charged by electric, natural gas, and telephone companies.

14.     According to the 2010 Census, the State of Georgia has a total population of 9,687,653 persons, of whom 5,787,440 (59.7%) are white, 3,054,098 (31.5%) are black, and 846,115 (8.7%) are members of other racial groups. U.S. Census Bureau, *QT-P5: Race Alone or in Combination (Georgia)*, 2010 Census Summary File 1. A true and correct copy of table QT-P5 is attached hereto as exhibit 1.

15.     According to the 2010 Census, Georgia has a voting-age population of 7,196,101 persons, of whom 4,481,721 (62.3%) are white, 2,140,789 (29.7%) are black, and 573,591 (8.0%) are members of other racial groups. U.S. Census Bureau, *P10: Race for the Population 18*

*Years and Over (Georgia)*, 2010 Census Summary File 1. A true and correct copy of table P10 is attached hereto as exhibit 2.

16.    Georgia's African-American population has grown since the 2010 Census. The 2018 American Community Survey, which is the most recent survey available from the Census Bureau, estimated that black residents make up approximately 33.2 percent of Georgia's total population and 32.3 percent of Georgia's citizen voting-age population.

17.    As of July 1, 2020, approximately 30.1 percent of Georgia's registered voters self-identified as African American.

18.    African Americans in Georgia are sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least one single-member district in an illustrative five-district plan for electing members of the Public Service Commission.

19.    For example, the illustrative plan attached hereto as exhibit 3 ("Illustrative Plan 1") contains one reasonably compact majority-black district.

20.    African-American voters in Georgia are politically cohesive in elections for members of the Public Service Commission.

21.     For example, in elections for members of the Public Service Commission between 2012 and 2018, African-American voters supported their preferred candidates with greater than 80 percent of their votes in every such election.

22.     A white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances—usually to defeat the candidates preferred by black voters in elections for members of the Public Service Commission.

23.     For example, in elections for members of the Public Service Commission between 2012 and 2018, white voters supported their preferred candidates with greater than 80 percent of their votes and were able to defeat the candidates preferred by black voters in every such election.

24.     The State of Georgia has a long and extensive history of voting discrimination against African Americans. *See, e.g.*, *Wright v. Sumter Cty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297, 1310 (M.D. Ga. 2018) ("Georgia's history of [racial] discrimination 'has been rehashed so many times that the Court can all but take judicial notice thereof.'").

6

25.     That history coincides with the onset in 1906 of statewide elections for members of the Public Service Commission. In that year, Hoke Smith ran successfully for governor on a platform of reforming the railroad commission and disenfranchising African-American voters. "I favor a constitutional amendment," Smith campaigned, "which will insure a continuation of white supremacy." He accomplished that shortly after taking office when Georgia adopted a constitutional amendment establishing a literacy test to vote—a test designed specifically to disenfranchise black voters.

26.     Voting in elections for members of the Public Service Commission is polarized along racial lines.

27.     For example, in elections for members of the Public Service Commission between 2012 and 2018, black and white voters supported different candidates with greater than 80 percent of their votes in every such election.

28.     Elections for members of the Public Service Commission feature at least three voting practices that enhance the opportunity for discrimination against African Americans. These include staggered terms, a majority-vote requirement, and unusually large voting districts.

29.     There is an informal slating process for members of the Public Service Commission that operates by gubernatorial appointment. In 2018, for example, Commissioner Stan Wise resigned with less than a year left on his six-year term, and Governor Nathan Deal appointed Tricia Pridemore to Wise's seat. Pridemore then ran in the 2018 election as an incumbent and defeated the candidate preferred by black voters. African-American voters have been denied access to this informal slating process since 2002, and they never had access to it before 1999.

30.     African Americans in Georgia bear the effects of discrimination in such areas as housing, employment, and health, which hinder their ability to participate effectively in the political process.

31.     Representation on the Public Service Commission is no exception. Though the Commission dates back to the 19th century, only one African American, David L. Burgess, has ever served on it.

32.     And Burgess did not become a member through statewide election. Rather, Governor Roy Barnes appointed him to fill a vacancy on the Commission in April 1999.

33.     Burgess was then elected in 2000, but only with the advantage of incumbency. He would only serve one full term before being

defeated in his 2006 campaign for reelection. No African American has served on the Commission before or since.

34.    The Public Service Commission has not been responsive to the particularized needs of African American residents of Georgia.

35.    The at-large method of electing members of the Public Service Commission lacks proportionality in that the percentage of districts in which African-American voters constitute an effective majority is less than the African-American percentage of Georgia's voting-age population.

## Claim One

36.    The at-large method of electing members of Georgia's Public Service Commission dilutes black voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

## Relief

37.    A real and actual controversy exists between the parties.

38.    The plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

39.     The plaintiffs are suffering irreparable harm as a result of the violation complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

WHEREFORE, the plaintiffs respectfully pray that this Court:

(1) enter a declaratory judgment that the at-large method of electing members of Georgia's Public Service Commission dilutes black voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(2) enjoin the Secretary of State from administering any future elections for members of the Public Service Commission using the at-large method of election;

(3) order the Secretary of State to administer future elections for members of the Public Service Commission using a method of election that complies with Section 2 of the Voting Rights Act;

(4) award the plaintiffs the costs of this action together with their reasonable attorneys' fees and expenses under 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988; and

(5) retain jurisdiction of this action and grant the plaintiffs any

further relief which may in the discretion of the Court be

necessary and proper.

Respectfully submitted this 14th day of July, 2020.

**/s/ Bryan L. Sells**
Attorney Bar No. 635562
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

**Nicolas L. Martinez** (*pro hac vice forthcoming*)
**Wesley A. Morrissette** (*pro hac vice forthcoming*)
Bartlit Beck LLP
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
Email: Nicolas.Martinez@bartlitbeck.com
Email: Wesley.Morrissette@bartlitbeck.com

*Attorneys for the Plaintiffs*