IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**RICHARD ROSE *et al.*,**

      Plaintiffs,

 vs.

**BRAD RAFFENSPERGER**, in his official capacity as Secretary of State of the State of Georgia,

      Defendant.

CIVIL ACTION
CASE NO. 1:20-cv-2921-SDG

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

ARGUMENT ......................................................................................3

I.      Plaintiffs Have Standing ....................................................3

II.     Plaintiffs Allege a Plausible Remedy.............................. 12

III.    Sovereign Immunity Does Not Bar This Action............................ 16

CONCLUSION .................................................................................. 17

**INTRODUCTION**

Plaintiffs have brought this action under Section 2 of the Voting Rights Act to challenge the at-large method of electing members of Georgia's Public Service Commission. Defendant now asks the Court to dismiss the case for three reasons, none of which has merit.

First, Plaintiffs have standing. They are African-American voters in Fulton County, Georgia, who have suffered the personal harm of having their voting strength diluted on account of race. Compl. ¶¶ 3, 6-9, 39, ECF 1. Their injury is fairly traceable to the Secretary of State, who administers elections for members of the Public Service Commission, and it would likely be redressed by a decision of this Court enjoining him from administering any future election for the Public Service Commission unless the method of election complies with Section 2. *Id.* ¶ 10. Plaintiffs need not allege more.

Second, Plaintiffs have pleaded a plausible remedy. Not only do they allege that "African Americans in Georgia are sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least one single-member district," but they

provide data and a proposed map illustrating this to be true. *Id.* ¶¶ 18-19; Compl. Ex. 3, ECF 1-3.

Finally, binding circuit precedent forecloses Defendant's assertion of sovereign immunity. Br. Supp. Def.'s Mot. Dismiss at 20, ECF 22-1.

The Court should deny his motion.

## BACKGROUND

Plaintiffs allege that they are "African-American voters" who "seek declaratory and injunctive relief prohibiting further use of the at-large method of election" for members of Georgia's Public Service Commission "on the ground that it dilutes black voting strength in violation of Section 2" of the Voting Rights Act. ECF 1 ¶ 3. Each is "an African-American resident and registered voter in Fulton County, Georgia." *Id.* ¶¶ 6-9. And each is "suffering irreparable harm as a result of the violation" of Section 2 described in the Complaint. *Id.* ¶ 39.

Plaintiffs allege further that Defendant, in his capacity as Secretary of State, "is the chief election official of the State of Georgia and is responsible for administering elections for members of the Public Service Commission." *Id.* ¶ 10 (citing O.C.G.A. §§ 21-2-50(a)(4), 21-2-154(a), 21-2-132(d)(2), 21-2-499(a), 21-2-502(c)). These provisions of

2

Georgia's election code detail various powers and duties of the Secretary of State, including the responsibility to "certify the result of each election of . . . Commissioners of the Georgia Public Service Commission." O.C.G.A. § 21-2-502(c).

In light of the Secretary of State's authority to manage Georgia's electoral system, including elections for the Public Service Commission, Plaintiffs seek injunctive relief against him "in his official capacity only." ECF 1 ¶ 10. Specifically, Plaintiffs request that the Court "enjoin the Secretary of State from administering any future elections for members of the Public Service Commission using the at-large method of election" and "order the Secretary of State to administer future elections for members of the Public Service Commission using a method of election that complies with Section 2 of the Voting Rights Act." *Id.* at 10.

## ARGUMENT

### I.   Plaintiffs Have Standing

To establish Article III standing, a plaintiff must allege three elements: (1) an "injury in fact" with a (2) "causal connection" to the defendant's conduct that is (3) likely to be "redressed" by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)

(brackets and quotation marks omitted). "At the motion-to-dismiss stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice' as there is a presumption that such general allegations are based on specific facts necessary to support the claim." *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1265 (N.D. Ga. 2019) (quoting *Lujan*, 504 U.S. at 561). Similarly, "the causation and redressability requirements are easily satisfied" at the pleading stage "where the facts alleged indicate a 'fairly traceable' link to the defendants' conduct and the potential for redress of the injury." *Id*. In "ruling on a motion to dismiss for want of standing," this Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Thompson v. Kemp*, 309 F. Supp. 3d 1360, 1364 (N.D. Ga. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

A plaintiff claiming vote dilution in a Section 2 case meets the constitutional injury requirement by alleging "that he or she (1) is registered to vote and resides in the district where the discriminatory dilution occurred; and (2) is a member of the minority group whose voting strength was diluted." *Broward Citizens for Fair Dists. v.*

*Broward Cty.*, No. 12-60317-CIV, 2012 WL 1110053, at *3 (S.D. Fla. Apr.
3, 2012) (collecting cases); *see also Gray v. Sanders*, 372 U.S. 368, 375
(1963) (holding that "any person whose right to vote is impaired has
standing to sue" (citation omitted)); *Baker v. Carr*, 369 U.S. 186, 206
(1962) ("[V]oters who allege facts showing disadvantage to themselves as
individuals have standing to sue."); *Greater Birmingham Ministries v.
Ala. Sec'y of State*, 966 F.3d 1202, 1220 (11th Cir. 2020) (explaining that
"minority voters in Alabama" had "standing to sue" in challenge to
statewide voter-identification statute under Section 2).

Plaintiffs have done just that. They allege that they are Black
residents of and registered voters in Fulton County, Georgia, who have
suffered the personal harm of having their voting strength diluted on
account of their race. ECF 1 ¶¶ 3, 6-9, 39. They allege further that
Georgia's at-large method of electing members of the Public Service
Commission violates Section 2, *id.* ¶ 3—meaning that it is a "standard,
practice, or procedure" resulting in the "denial or abridgement" of their
right "to vote on account of race or color." 52 U.S.C. § 10301(a). As a
result, Plaintiffs have suffered the injury Congress specified: they have
"less opportunity than other members of the electorate to participate in

the political process and to elect representatives of their choice." *Id.*
§ 10301(b).

Plaintiffs have also satisfied the causation and redressability
requirements. The injury they allege is fairly traceable to the Secretary
of State's conduct as Georgia's "chief election official" administering the
at-large elections for the Public Service Commission and certifying the
results of those elections. ECF 1 ¶ 10. And it would likely be redressed
by a favorable decision of this Court enjoining the Secretary of State
"from administering any future elections for members of the Public
Service Commission using the at-large method of election" and ordering
him "to administer future elections for members of the Public Service
Commission using a method of election that complies with Section 2." *Id.*
at 10.

Not surprisingly, then, Defendant has failed to identify a single
case in which a court has held that a minority voter lacks standing to
bring a Section 2 vote-dilution claim challenging at-large elections for
statewide offices. He fails even to cite two recent decisions that
considered and rejected his argument. *See Ala. State Conf. of NAACP v.
Alabama,* 264 F. Supp. 3d 1280, 1290 (M.D. Ala. 2017) (holding that four

6

Black Alabama voters had standing in a Section 2 case challenging statewide, at-large election of appellate judges), *aff'd*, 949 F.3d 647 (11th Cir. 2020); *Lopez v. Abbott*, 339 F. Supp. 3d 589, 599-600 (S.D. Tex. 2018) (finding that Texas voters of "Hispanic descent" had standing in Section 2 case to challenge "statewide, at-large elections" of appellate judges).

Instead, Defendant offers two reasons why he says Plaintiffs lack standing. Neither has merit.

First, Defendant asserts that "[s]tatewide elections for statewide offices" somehow "cannot result in vote dilution in violation of Section 2." ECF 22-1 at 10. That assertion is contrary to the plain text of the Voting Rights Act, which provides that states can use "[n]o" voting "standard, practice, or procedure" that "results in a denial or abridgement" of a citizen's right "to vote on account of race." 52 U.S.C. § 10301(a). There is no exception for statewide elections for statewide offices.

If Congress had meant to exempt a category of voting practices from scrutiny under the Voting Rights Act, it could have done so. *See Chisom v. Roemer*, 501 U.S. 380, 396 (1991) (explaining that had Congress intended "to exclude [a category of] vote dilution claims . . .

from the coverage of § 2," it would have made that exemption "explicit in the statute"). As the Supreme Court has instructed, "the Act should be interpreted in a manner that provides 'the broadest possible scope' in combating racial discrimination." *Id.* at 403 (quoting *Allen v. State Bd. of Elections*, 393 U.S. 544, 567 (1969)). "It is difficult to believe," therefore, that Congress "withdrew, without comment, an important category of elections" from the Voting Rights Act's protections. *Id.* at 404.

Contrary to Defendant's claim, there is nothing "categorically different" about statewide elections for statewide office under Section 2. ECF 22-1 at 10. Which is why Defendant cites no case holding as much. Defendant relies instead on *Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020), and *Gill v. Whitford*, 138 S. Ct. 1916 (2018). *See* ECF 22-1 at 7-11. But neither was a Section 2 case. And both were decided after trials, not at the pleading stage. Moreover, *Jacobson* recognizes that voters "have an interest . . . in their vote being given the same weight as any other." 957 F.3d at 1202. That interest is at stake here. *See* 52 U.S.C. § 10301(b); ECF 1 ¶ 3.

Defendant's second assertion, which he says defeats causation and redressability, is that Plaintiffs sued the wrong person. ECF 22-1 at 12-

15. Not so. The Secretary of State is Georgia's "chief election official." O.C.G.A. § 21-2-50(b). He is responsible for administering elections for members of the Public Service Commission and, importantly, for certifying the results of those elections. ECF 1 ¶ 10 (citing O.C.G.A. §§ 21-2-50(a)(4), 21-2-154(a), 21-2-132(d)(2), 21-2-499(a), 21-2-502(c)). He is also a member and the chairperson of the State Election Board, which is "vested with the power to issue orders . . . directing compliance with" Georgia's election code and "prohibiting the actual or threatened commission of any conduct constituting a violation" of the code. O.C.G.A. §§ 21-2-30, 21-2-33.1(a). Thus, "the Secretary of State is a proper party in this action" because "his power by virtue of his office sufficiently connects him with the duty of enforcement." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (brackets and quotation marks omitted). That duty of enforcement means that Article III's causation and redressability requirements are met here.

*Thompson* is instructive. In that case, the plaintiffs sued only the Secretary of State in a Section 2 lawsuit challenging a redistricting plan for Georgia's House of Representatives. 309 F. Supp. 3d at 1361-62. Rejecting the Secretary of State's attempt to dismiss the case for lack of

standing, the court held that "[a] favorable decision requiring the drawing of an additional majority-minority district could redress the injury [the plaintiffs] allege." *Id.* at 1365. It did not matter, as Defendant argues here (ECF 22-1 at 12), that the Georgia legislature was responsible for the challenged practice. That is because the practice, "even though enacted by the State's legislature," was still "implemented and enforced by the state officials who are named as defendants." *Baten v. McMaster*, 967 F.3d 345, 353 (4th Cir. 2020); *see also Black Voters Matter Fund v. Raffensperger*, No. 1:20-CV-01489-AT, 2020 WL 4597053, at *19-20 (N.D. Ga. Aug. 11, 2020) (sufficient "causal connection" alleged against Secretary of State for standing purposes). Indeed, Section 2 vote-dilution cases against state officials, including secretaries of state, are routine. *See, e.g.*, *Thornburg v. Gingles*, 478 U.S. 30 (1986); *White v. Regester*, 412 U.S. 755 (1973); *Bone Shirt v. Hazeltine*, 461 F.3d 1011 (8th Cir. 2006); *Old Person v. Cooney*, 230 F.3d 1113 (9th Cir. 2000).

Nor does it matter, as Defendant suggests, that the Governor is not a party. The remedial process following a Section 2 violation is well established. This Court would first give the Georgia General Assembly a reasonable opportunity to craft a remedy, unless doing so would not be

"practicable." *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978). If the General Assembly failed to adopt a suitable remedy, this Court would then have the "unwelcome obligation" of creating an interim remedy for use until the legislature adopted a lawful replacement. *Perry v. Perez*, 565 U.S. 388, 392 (2012). And this Court would have the power to order such an interim remedy into effect by virtue of the Secretary of State's duty of enforcement over elections for members of the Public Service Commission. There would be no vacancies as a result of any such remedial order, and the Governor would not have any authority to nullify elections through appointments, as Defendant implies. ECF 22-1 at 15 (citing O.C.G.A. § 46-2-4).

Defendant's reliance on *Jacobson* and *Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019) (en banc), is similarly misplaced. ECF 22-1 at 12-15. Unlike the Florida and Alabama officials sued in those cases, Georgia's Secretary of State has statutory authority to enforce compliance with the challenged electoral practice and, therefore, with any court-ordered remedy here. O.C.G.A. §§ 21-2-30, 21-2-33.1(a), 21-2-499(a), 21-2-502(c); *see also Grizzle*, 634 F.3d at 1319 (Secretary of State "has both the power and the duty to ensure that the

entities charged with responsibilities [over local elections] comply with Georgia's election code").

## II.    Plaintiffs Allege a Plausible Remedy

"In alleging a remedy capable of surviving a motion to dismiss," plaintiffs in a Section 2 case "need only demonstrate facial plausibility." *Ala. State Conf.*, 264 F. Supp. 3d at 1285. Plaintiffs easily meet this standard.

Here, "because the challenged system is at-large voting, just as in *Gingles* the adequate alternative electoral system is simply single-member districting, which is a workable regime and an available remedy." *Ga. State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1366 (N.D. Ga. 2013). In fact, single-member districts are the *required* remedy here unless the Court "can articulate such a singular combination of unique factors" that justifies a different result. *Chapman v. Meier*, 420 U.S. 1, 21 (1975) (internal quotation marks omitted); *see also Gingles*, 478 U.S. at 34-35; *Wise*, 437 U.S. at 540; *E. Carroll Parish Sch. Bd. v. Marshall*, 424 U.S. 636, 639 (1976) (per curiam); *Connor v. Johnson*, 402 U.S. 690, 692 (1971). "The necessary showing in this case therefore is that the minority group is sufficiently

large and geographically compact to constitute a majority in a single-member district." *Ga. State Conf.*, 952 F. Supp. 2d at 1366.

In their Complaint, Plaintiffs allege that "African Americans in Georgia are sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least one single-member district in an illustrative five-district plan for electing members of the Public Service Commission." ECF 1 ¶ 18. Plaintiffs also provide the Court with an illustrative plan showing how one such compact, majority-Black district could be drawn. ECF 1-3. These allegations more than satisfy the requirement of an adequate remedy.

Defendant nonetheless argues that no remedy is possible because "as the state's chosen form of government, a challenge to the method of electing the PSC is beyond the reach of Section 2." ECF 22-1 at 18. Like his standing argument, though, this argument is inconsistent with the text of Section 2, which admits of no exceptions, and with the Supreme Court's command to give Section 2 the "broadest possible scope." *Chisom*, 501 U.S. at 403. Defendant cites no case holding that the Voting Rights Act does not apply to at-large elections for statewide office. This Court

should reject Defendant's invitation to be the first to create such a categorical exception to the Voting Rights Act.

The cases on which Defendant does rely are inapposite. ECF 22-1 at 16-17. Each involved judicial elections and was decided after a trial. In the most recent of those cases, *Alabama State Conference*, the district court held on a pre-discovery motion to dismiss that the plaintiffs' illustrative single-member districting plan was "a facially plausible remedy at [that] stage." *Ala. State Conf.*, 264 F. Supp. 3d at 1285-86.

In a later ruling, the court also noted the "distinctive" nature of Section 2 challenges to judicial elections arising from matters of jurisdiction and the administration of justice. *Ala. State Conf. of NAACP v. Alabama*, —F. Supp. 3d—, No. 2:16-CV-731-WKW, 2020 WL 583803, at *16-17 (M.D. Ala. Feb. 5, 2020). While "proof of all three *Gingles* preconditions usually warrants relief in other contexts, the Eleventh Circuit has simply not treated challenges to judicial-election methods like other § 2 cases." *Id.* at *16

But this case does not involve judicial elections. It involves elections for members of a regulatory body. The Commission's functions are both legislative and adjudicative. *See* O.C.G.A. § 46-2-1 *et seq.*

14

Plaintiffs' illustrative plan, if adopted, would not "abolish a particular form of government" or "remak[e] . . . Georgia's governmental structure for regulating utilities." ECF 22-1 at 17. It would not alter the Commission's jurisdiction or change the territory over which the Commission or any commissioner governs. Nor would it change the work demands or accountability structure of the Commission, which already has residency districts as a qualification for office. Like any legislator in the General Assembly, each commissioner would still vote as one member of the Commission to make decisions on issues affecting the entire state. Substantively, this case is much closer to *Gingles* and other cases involving statewide legislative bodies than it is to cases involving judicial elections.

Defendant also argues that Plaintiffs' illustrative plan fails to provide "a reasonable alternative practice as a benchmark against which to measure the existing voting practice." ECF 22-1 at 18 (quoting *Holder v. Hall*, 512 U.S. 874, 880 (1994)). This argument fails, too. Single-member districts are not just a reasonable alternative practice to at-large elections, they are the "preferred" alternative. *E. Carroll Parish*, 424 U.S. at 639. And, unlike in *Holder*, Plaintiffs here do not challenge

the size of the Commission. 512 U.S. at 885. There are five commissioners now, and there would be five commissioners under Plaintiffs' illustrative plan.

## III.   Sovereign Immunity Does Not Bar This Action

Although this is not a suit against a state, Defendant argues that it is barred by sovereign immunity. ECF 22-1 at 19-20. But the Eleventh Circuit has already held that states are not immune from suits brought by private citizens under Section 2 of the Voting Rights Act. *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 652-55 (11th Cir. 2020). There is no controversy on this issue. The majority opinion was unequivocal in its ruling that "both the Attorney General ***and aggrieved persons*** may institute proceedings against a State or a political subdivision." *Id.* at 653 (emphasis added).

Defendant admits that his argument is foreclosed. *See* ECF 22-1 at 20 ("While the majority disagreed . . . ."). He nonetheless rehashes an already-rejected argument based primarily on the dissent in *Alabama State Conference*. That argument fails, of course, in the face of binding precedent to the contrary. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts

sitting within its jurisdiction . . . .”). So even if Plaintiffs had chosen to sue a state, sovereign immunity would have posed no obstacle.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Respectfully submitted this 27th day of August, 2020.

<u>/s/ **Bryan L. Sells**</u>
Attorney Bar No. 635562
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

**Nicolas L. Martinez** (*pro hac vice*)
**Wesley A. Morrissette** (*pro hac vice*)
Bartlit Beck LLP
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
Email:
nicolas.martinez@bartlitbeck.com
Email:
wesley.morrissette@bartlitbeck.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan L. Sells*
Bryan L. Sells

18