| | |
|---|---|
| RICHARD ROSE et al.,<br><br>Plaintiffs<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia,<br><br>Defendant. | Civil Action No. 1:20-cv-02921-SDG |

**PLAINTIFFS' SECOND MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

Plaintiffs respectfully move the Court for summary judgment on the third, seventh, eighth, ninth, and tenth affirmative defenses raised in Defendant's answer. (ECF 37 at 2-3.) Plaintiffs also move the Court for summary judgment on the first, second, and third preconditions set out in *Thornburg v. Gingles*, 478 U.S. 30 (1986).

## BACKGROUND

This is a challenge to the method of electing members of Georgia's Public Service Commission (the "Commission"). The Commission consists of five members elected at-large by all Georgia voters in partisan elections to serve

staggered six-year terms. Ga. const. art. IV, § 1, ¶ I; O.C.G.A. § 46-2-1. Among many other duties, the Commission regulates the rates that electric, natural gas, and telephone companies can charge Georgia's consumers. O.C.G.A. § 46-2-1 *et seq*.

Plaintiffs are four African-American residents of Fulton County. (SUMF ¶ 1.)[1] Each Plaintiff is a registered voter, and each has voted in recent elections for members of the Commission. (*Id.*) Defendant Brad Raffensperger is the Georgia Secretary of State. (ECF 37 ¶ 10.) He administers the elections for members of the Commission (SUMF ¶ 2), and he is sued in his official capacity only.

Plaintiffs filed this action on July 14, 2020. (ECF 1.) They claim that the at-large method of electing members of the Commission dilutes Black voting strength in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. (*Id.* ¶ 36.)

On August 14, 2020, Defendant moved to dismiss Plaintiffs' complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF 22.) The Court denied that motion on January 5, 2021 (ECF 36), and Defendant answered the Complaint on January 26, 2021 (ECF 37).

---

[1] Paragraph 1 of Plaintiffs' Statement of Undisputed Material Facts was attached to Plaintiffs' First Motion for Partial Summary Judgment. (ECF 56-3.) Subsequent paragraphs can be found in Plaintiffs' Second Statement of Undisputed Material Facts filed concurrently with this motion.

Defendant's answer asserts ten affirmative defenses, five of which are at issue here:

3. Plaintiffs lack constitutional standing to bring this action.

. . .

7. Plaintiffs' Complaint requests relief that will result in a violation of the U.S. Constitution because Plaintiffs' proposed remedies require the use of race as a predominate factor in the redistricting process, which is prohibited by the Equal Protection Clause of the Fourteenth Amendment.

8. Plaintiffs' Complaint requests relief that will result in a violation of the U.S. Constitution because Plaintiffs' proposed remedies require the alteration of the form of government of the State of Georgia.

9. Defendant denies that Plaintiffs have been subjected to the deprivation of any right, privilege, or immunity under the Constitution or laws of the United States.

10. Defendant reserves the right to amend its defenses and to add additional ones, including lack of subject matter jurisdiction based on the mootness or ripeness doctrines, as further information becomes available in discovery.

(ECF 37 at 2-3.) Plaintiffs seek summary judgment as to all five of these defenses.

In addition, Plaintiffs served their first set of requests for admission on Defendant on May 25, 2021. Defendant's response includes the following:

**REQUEST FOR ADMISSION NO. 1:**
Admit that Black voters in Georgia are sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least one single-member district in a five-district plan for electing members of the Public Service Commission.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSION NO. 2:**

Admit that Black voters in Georgia have been politically cohesive in general elections for members of the Public Service Commission between 2012 and the present.

**RESPONSE:**

Defendant admits that Black voters in Georgia have been politically cohesive in general elections for members of the Public Service Commission between 2012 and the present but further states that the political cohesion of Black voters in PSC elections is based on partisan affiliation and not racial affiliation.

**REQUEST FOR ADMISSION NO. 3:**

Admit that a white majority has voted sufficiently as a bloc to enable it to defeat the candidates preferred by Black voters in elections for members of the Public Service Commission between 2012 and the present.

**RESPONSE:**

Defendant admits that candidates preferred by Black voters have been defeated in elections for the Public Service Commission between 2012 and the present and further that those candidates were not supported by a majority of white voters. Defendant further states that the defeats of candidates preferred by Black voters is based on the partisan affiliation of those candidates.

(SUMF ¶¶ 5-7.) Based on these admissions, and the undisputed analyses of

Plaintiffs' expert statistician, Plaintiffs now move for summary judgment on all

three *Gingles* preconditions.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the Court does not grant all of the relief requested in the motion, "it may enter an order stating any material fact ... that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Although commonly referred to as a "partial summary judgment," an order under Rule 56(g) is "merely a pretrial adjudication that certain issues shall be established for the trial of the case." Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States, 5 F.R.D. 433, 475 (Advisory Committee Note). This procedure serves to streamline the litigation by eliminating before trial any matters as to which there is no genuine issue of fact. *See id.*; *see also, e.g.*, *United States v. Charleston Cnty.*, 318 F. Supp. 2d 302 (D.S.C. 2002) (granting partial summary judgment on the three *Gingles* preconditions).

A party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, a party opposing summary

judgment must present evidence showing either (1) a genuine issue of material fact, or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material. *Id*. A factual dispute is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id*. (quoting Fed. R. Civ. P. 56(e)).

In determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Id*. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999) (per curiam). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Anderson*, 477 U.S. at 255; *see also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (per curiam). Summary judgment for the moving party is proper "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

Under Federal Rule of Civil Procedure 36(b), "[a] matter admitted under [a Request for Admission] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

## ARGUMENT

### I. AFFIRMATIVE DEFENSES

Defendant's ninth and tenth affirmative defenses are not affirmative defenses at all. They are legal boilerplate. The ninth is a general denial, and the tenth is a reservation of the right to assert other defenses in the future. Neither constitutes any defense here, and summary judgment is appropriate to dispose of them. *See, e.g.*, *HSBC Bank USA, N.A. v. Davis*, No. 1:12-cv-06801, 2017 WL 1208378, at *6-7 (N.D. Ill. Apr. 3, 2017).

Summary judgment should also be granted on Defendant's seventh affirmative defense, which Defendant has stipulated there is no evidence to support. (SUMF ¶ 3.)

Plaintiffs address the remaining two defenses in greater detail below.

### A.   Plaintiffs have constitutional standing.

Defendant's third affirmative defense asserts that Plaintiffs lack constitutional standing. (ECF 37 at 2.) To establish Article III standing, a plaintiff must establish three elements: (1) an "injury in fact" with a (2) "causal connection" to the defendant's conduct that is (3) likely to be "redressed" by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).

At the motion-to-dismiss stage of this case, this Court rejected Defendant's facial challenge to Plaintiffs' standing. (ECF 36 at 15-33.) The Court held that the Complaint met the injury requirement because Plaintiffs alleged that "[t]hey are all African Americans who reside and are registered to vote in Fulton County, Georgia." (*Id.* at 20.) The Court also concluded that the Complaint satisfied the traceability and redressability elements because the Secretary of State "is the person responsible for administering elections" for members of the Public Service Commission. (*Id.* at 30.)

Now, at the summary-judgment stage of this case, the allegations in the Complaint are supported by record evidence. It is undisputed that each Plaintiff is an African-American resident and registered voter in the area from which members of the Public Service Commission are elected at large, and each has voted in recent elections for members of the Public Service Commission. (SUMF ¶ 1.) That is enough to satisfy the injury-in-fact requirement in a Section 2 vote-dilution case challenging the at-large method of electing members of the Public Service Commission for the reasons cited in the Court's ruling on the motion to dismiss. (ECF 36 at 17-28.) *See Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020); *see also, e.g.*, *Harding v. Dallas Cnty.*, 948 F.3d 302, 307 (5th Cir. 2020) (holding that Anglo voters had standing under Section 2 where the district court found that each plaintiff resided in a district in which vote dilution was alleged to have occurred).

It is also undisputed that Defendant administers elections for members of the Public Service Commission. (SUMF ¶ 2.) He has stipulated to his role in those elections, which includes qualifying candidates, building the databases used to create absentee ballots and to program voting machines, counting the votes, certifying the results, and signing the winner's commission. (*Id.*) At each step in the election process, Defendant is enforcing the at-large method of election. At the

9

qualification step, for example, he determines whether a candidate is qualified to run for a particular seat based, in part, on his or her residence. At the database-building step, he determines which voters will see those candidates on their ballot. At the vote-counting step, he decides which votes cast for the candidates will count. And so on. Defendant is thus causing the alleged vote dilution through his administration of those elections, and injunctive relief against him would redress it. The Court reached the same conclusion at the motion-to-dismiss stage (ECF 36 at 28-33), but now the allegations upon which the Court relied have evidentiary support.

Having now adduced competent and undisputed evidence of all three elements of constitutional standing, Plaintiffs are entitled to summary judgment on that issue.

**B.      Defendant's eighth affirmative defense has no merit.**

In his eighth affirmative defense, Defendant asserts that "Plaintiffs' Complaint requests relief that will result in a violation of the U.S. Constitution because Plaintiffs' proposed remedies require the alteration of the form of government of the State of Georgia."[2] (ECF 37 at 2.) In response to an

---

[2] Plaintiffs' Complaint requests the following relief: (1) a declaration that the at-large method of electing members of the Public Service Commission violates Section 2; (2) an injunction preventing Defendant from using the at-large method in the future; (3) an injunction requiring Defendant to use a method of election that complies with Section 2; (4) attorneys' fees; and (5) other necessary and proper relief. (ECF 1 at 10-11.)

interrogatory asking for the constitutional provisions to which he is referring, Defendant responded as follows: "Defendant's Eighth Affirmative Defense refers to the violation of the State's sovereignty as guaranteed by the U.S. Const. art. IV, § 4 [the Guarantee Clause][3] and the Tenth Amendment (and as articulated by the Supreme Court's [*sic*] in *Holder v. Hall*, 512 U.S. 874 (1994)), because Plaintiffs propose to alter Georgia's Constitutional provision for statewide election of members of the Public Service Commission. Plaintiffs' requested relief also violates the Constitution in that it exceeds the remedial power of the Fourteenth Amendment." (SUMF ¶ 4.) None of these legal arguments has merit, and Plaintiffs are therefore entitled to summary judgment on Defendant's eighth affirmative defense.

### 1. State Sovereignty

The relief requested by Plaintiffs' Complaint does not violate state sovereignty for at least three reasons. First, the factual predicate of Defendant's argument—that "Plaintiffs propose to alter Georgia's Constitutional provision for statewide election of members of the Public Service Commission"—is inaccurate. (*Id.*) Second, binding precedent forecloses Defendant's arguments under the

---

[3] Article IV, Section 4 of the United States Constitution provides as follows: "The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence."

Guarantee Clause and the Tenth Amendment to the United States Constitution. And, third, the Supreme Court's decision in *Holder v. Hall* does not stand for any principle of state sovereignty.

The factual predicate of Defendant's state-sovereignty argument is based on a misreading of Georgia law. As this Court has already recognized (ECF 36 at 36), the method of electing members of the Public Service Commission is not set out in the Georgia Constitution. Rather, it is set out in a statute. *See* O.C.G.A. § 46-2-1(a). That statute provides in relevant part as follows: "each member of the commission shall be elected state wide by the qualified voters of this state who are entitled to vote for members of the General Assembly." *Id.* In addition, the at-large method of election was first adopted by statute in 1906, 1906 Ga. Laws 100, and that provision has always been set out in the Georgia Code. *See, e.g.*, Ga. Civil Code 1910 § 2615. Although the Commission gained constitutional status in 1943, the Georgia Constitution says nothing about the Commission's method of election. *See* Ga. Const. art. IV, § 1, ¶ 1. It says only that commissioners must be "elected by the people," *id.*, and not, for example, appointed by the Governor. *Cf.* Ga. Const. art. IV, § 2, ¶ 1 (providing that members of the State Board of Pardons and Paroles are to be "appointed by the Governor"). Defendant's state-sovereignty

argument must therefore fail to the extent that it depends on the method of electing commissioners being enshrined in the Georgia Constitution.

The United States Constitution is of no help to Defendant, either. He is not the first litigant to allege that the Voting Rights Act violates states' rights under the Guarantee Clause and the Tenth Amendment, and the courts have long since decided those issues. In *City of Rome v. United States*, 446 U.S. 156, 182 n.17 (1980), the Supreme Court rejected the argument that the Voting Rights Act violates the Guarantee Clause, noting that such claims are not justiciable in federal court. *See also Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019); *Baker v. Carr*, 369 U.S. 186, 218-29 (1962); *Luther v. Borden*, 7 How. 1, 12 L. Ed. 581 (1849). And, as this Court has already recognized (ECF 36 at 44-46), the Eleventh Circuit rejected the argument that Section 2 violates the Tenth Amendment in *United States v. Marengo County Commission*, 731 F.2d 1546, 1560-61 (11th Cir. 1984). Binding precedent thus requires the Court to reject Defendants' state-sovereignty argument.

Lastly, Defendant's reliance on *Holder v. Hall* is misplaced. In that case, the Supreme Court held that the size of a governing body is not subject to challenge under Section 2. *See* 512 U.S. at 885. But *Hall* has no majority opinion. Although it was a 5-to-4 decision to reverse the court of appeals, no opinion in favor of that

judgment received more than three votes. The plurality opinion, authored by Justice Kennedy, "reasoned that it was impossible to assess dilution in this case because there was no readily identifiable alternative government to which Bleckley County's system reasonably could be compared." *Hall v. Holder*, 117 F.3d 1222, 1224 (11th Cir. 1997). Justice Kennedy's decision focuses on the practical difficulty of finding a reasonable benchmark against which to measure dilution, and it says not a word about state sovereignty or the Tenth Amendment. In fact, neither phrase appears at all in the plurality opinion. Plaintiffs here do not challenge the size of the Public Service Commission, and nothing else in the plurality opinion suggests that Section 2 does not apply to the method of electing a multi-member body like the Public Service Commission.

### 2. Fourteenth Amendment

Defendant's contention that Section 2 exceeds the remedial power of the Fourteenth Amendment fares no better. The Supreme Court summarily affirmed the constitutionality of Section 2 in *Mississippi Republican Executive Committee v. Brooks*, 469 U.S. 1002 (1984)—a decision that is binding on this Court. *See Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975). The Eleventh Circuit also rejected Defendant's argument in *Marengo County*, 731 F.2d at 1550, and again in *Johnson v. Hamrick*, 196 F.3d 1216, 1219 n.3 (11th Cir. 1999). The Fifth Circuit rejected it

in *Veasey v. Abbott*, 830 F.3d 216, 253 n.47 (5th Cir. 2016) (en banc). And the Ninth Circuit rejected it in *United States v. Blaine County*, 363 F.3d 897, 904-05 (9th Cir. 2004).

Of course, Defendant may wish to preserve the argument for later review in the Supreme Court. But this Court is bound by precedent to grant summary judgment.

## II. *GINGLES* PRECONDITIONS

### A. Plaintiffs satisfy the first *Gingles* precondition: numerosity and compactness.

It is uncontested that Plaintiffs satisfy the first *Gingles* precondition, which requires Plaintiffs to show that Black voters in Georgia are "sufficiently large and geographically compact to constitute a majority in a single-member district." *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1303 (11th Cir. 2020) (internal quotation marks omitted). Defendant explicitly admits that "Black voters in Georgia are sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least one single-member district in a five-district plan for electing members of the Public Service Commission." (SUMF ¶ 5.)

In addition, Plaintiffs' expert statistician, Dr. Stephen J. Popick, analyzed the Commission's current residency districts and the illustrative plan attached to

Plaintiffs' Complaint. He found that Black voters would have been able to elect a candidate of their choice in at least one district if elections for the Public Service Commission between 2012 and the present had been held under those plans. (SUMF ¶ 9.) That more than satisfies the first *Gingles* precondition, and Dr. Popick's analysis is undisputed.

Thus, there exists no genuine issue of fact as to the first *Gingles* precondition, and the Court should find that Plaintiffs have satisfied the first *Gingles* precondition as a matter of law.

**B.     Plaintiffs satisfy the second *Gingles* precondition: minority political cohesion.**

The second *Gingles* precondition requires Plaintiffs to show that Black voters in Georgia are "politically cohesive." *Gingles*, 478 U.S. at 49-50. One way of proving the second *Gingles* precondition is by "showing that a significant number of minority group members usually vote for the same candidates," and this is most often accomplished by examining statistical analyses of actual election results that estimate the voting patterns of minority and non-minority voters. *Id.* at 56.

The evidence here clearly meets this standard. For one, Defendant admits that "Black voters in Georgia have been politically cohesive in general elections for members of the Public Service Commission between 2012 and the present."

(SUMF ¶ 6.) This is enough to satisfy the second *Gingles* precondition. *See* Fed. R. Civ. P. 36(b).

For another, Dr. Popick analyzed the preferences of Black voters in all general and runoff elections for members of the Public Service Commission between 2012 and the present. (SUMF ¶ 10.) Table 1, which summarizes the results of those analyses, shows that Black voters have been highly cohesive in those elections, often supporting their preferred candidates with more than 90 percent of their votes. (SUMF ¶ 11.) Dr. Popick's statistical analysis is undisputed, (SUMF ¶ 14), and it more than satisfies the second *Gingles* precondition.

**Table 1: Summary of Election Analyses (Black-Preferred Candidate)**

| Election | Black-Preferred Candidate | Race of Candidate | Outcome | Black Support | White Support |
|---|---|---|---|---|---|
| 2021 - District 4 Runoff | Blackman | Black | LOST | 96.08% | 17.62% |
| 2020 - District 4 | Blackman | Black | RUNOFF | 94.33% | 14.83% |
| 2020 - District 1 | Bryant | Black | LOST | 94.46% | 14.47% |
| 2018 - District 5 | Randolph | White | LOST | 96.03% | 14.40% |
| 2018 - District 3 Runoff | Miller | White | LOST | 97.84% | 20.13% |
| 2018 - District 3 | Miller | White | RUNOFF | 96.55% | 14.83% |
| 2016 - District 2 | Hoskins | White | LOST | 79.18% | 14.64% |
| 2014 - District 4 | Blackman | Black | LOST | 81.29% | 24.28% |
| 2014 - District 1 | Monds | Black | LOST | 82.44% | 12.49% |
| 2012 - District 5 | Staples | White | LOST | 80.57% | 15.36% |
| 2012 - District 3 | Oppenheimer | White | LOST | 89.43% | 21.47% |

Thus, there exists no genuine issue of fact as to the second *Gingles* precondition and the Court should find that Plaintiffs have satisfied the second *Gingles* precondition as a matter of law.

**C.** **Plaintiffs satisfy the third *Gingles* precondition: legally significant racially polarized voting.**

The third *Gingles* precondition requires Plaintiffs to show that white voters in Georgia have voted sufficiently as a bloc to enable them, in the absence of special circumstances, usually to defeat the candidate preferred by Black voters in elections for the Public Service Commission. *See Wright*, 979 F.3d at 1304.

Here, Defendant admits that "candidates preferred by Black voters have been defeated in elections for the Public Service Commission between 2012 and the present" and that such "candidates were not supported by a majority of white voters." (SUMF ¶ 7.)

In addition, Dr. Popick analyzed the preferences of white voters in all general and runoff elections for members of the Public Service Commission between 2012 and the present. (SUMF ¶ 12.) Table 2, which summarizes the results of those analyses, shows that white voters have voted sufficiently as a bloc to defeat the Black-preferred candidates in every one of those elections. (SUMF ¶ 13.) Dr. Popick's statistical analysis is undisputed, (SUMF ¶ 14), and it more than satisfies the third *Gingles* precondition.

**Table 2: Summary of Election Analyses (White-Preferred Candidate)**

| Election | White-Preferred Candidate | Race of Candidate | Outcome | Black Support | White Support |
|---|---|---|---|---|---|
| 2021 - District 4 Runoff | McDonald | White | WON | 3.25% | 80.64% |
| 2020 - District 4 | McDonald | White | RUNOFF | 3.57% | 77.47% |
| 2020 - District 1 | Shaw | White | WON | 5.19% | 78.19% |
| 2018 - District 5 | Pridemore | White | WON | 2.82% | 79.69% |
| 2018 - District 3 Runoff | Eaton | White | WON | 1.87% | 78.97% |
| 2018 - District 3 | Eaton | White | RUNOFF | 3.67% | 78.01% |
| 2016 - District 2 | Echols | White | WON | 20.82% | 85.36% |
| 2014 - District 4 | McDonald | White | WON | 18.71% | 75.72% |
| 2014 - District 1 | Everett | White | WON | 17.56% | 87.51% |
| 2012 - District 5 | Wise | White | WON | 19.43% | 84.64% |
| 2012 - District 3 | Eaton | White | WON | 10.57% | 78.53% |

Thus, there exists no genuine issue of fact as to the third *Gingles* precondition and the Court should find that Plaintiffs have satisfied the third *Gingles* precondition as a matter of law.

## CONCLUSION

The Court should grant summary judgment in Plaintiffs' favor on Defendant's third, seventh, eighth, ninth, and tenth affirmative defenses. The Court should also grant summary judgment in Plaintiffs' favor on the three *Gingles* preconditions and find that each has been conclusively established.

Dated: July 9, 2021

/s/ *Bryan L. Sells*
Attorney Bar No. 635562
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

Nicolas L. Martinez (*pro hac vice*)
Wesley A. Morrissette (*pro hac vice*)
Bartlit Beck LLP
54 W. Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
Email: nicolas.martinez@bartlitbeck.com
Email: wesley.morrissette@bartlitbeck.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing document has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Bryan Sells
Bryan L. Sells