**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RICHARD ROSE et al., <br><br> Plaintiffs <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, <br><br> Defendant. | Civil Action No. 1:20-cv-02921-SDG |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Partial summary judgment is not unusual in voting cases. For example, in *United States v. Charleston County*, 318 F. Supp. 2d 302 (D.S.C. 2002), the district court granted partial summary judgment in the plaintiff's favor on the three preconditions for a Section 2 claim set out in *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). More recently, the district court granted partial summary judgment in the plaintiff's favor on the first *Gingles* precondition and other issues in *Wright v. Sumter County Board of Elections and Registration*, No. 1:14-cv-42 (WLS), 2017 WL 10845104, at *11, *13 (M.D. Ga. Oct. 26, 2017), *aff'd* 979 F.3d 1282 (11th Cir. 2020). Both cases still went to trial, but those trials were streamlined and

shorter than they otherwise would have been because, prior to trial, the district courts eliminated matters as to which there was no genuine dispute. This Court should do the same.

Very little here remains in dispute. Defendant concedes that the Court should grant partial summary judgment as to five of his ten affirmative defenses. (ECF 62 at 8-9; ECF 85 at 7 n.3.) He admits all but two of the material facts on which Plaintiffs rely. (ECF 85-1 at 2, 5.) And his arguments are mostly legal— including one that relies on a minority opinion in *Nipper v. Smith*, 39 F.3d 1494 (11th Cir. 1994) (en banc)—and the Court has already rejected most of those. The Court should reject Defendant's arguments (again) and grant Plaintiffs' second motion for partial summary judgment.

## I. Plaintiffs are entitled to summary judgment on constitutional standing.

Without citing any authority, Defendant argues that "a party invoking the Court's jurisdiction cannot be awarded summary judgment on the issue of having established standing because at any moment a party may lose constitutional standing." (ECF 85 at 8 (internal emphasis omitted).) But that is not the law. In fact, courts routinely grant summary judgment in plaintiffs' favor on standing. For example, in *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 334 (1999), the Supreme Court held that plaintiffs alleging vote

dilution through the Census Bureau's use of statistical sampling techniques were entitled to summary judgment on the issue of standing. The plaintiffs had relied on expert testimony that Indiana would likely lose a seat if the Census Bureau used sampling techniques to apportion Representatives among the States. *Id.* at 330-31. The defendants criticized the expert's analysis but "failed to set forth any specific facts showing that there is a genuine issue of standing for trial." *Id.* at 330. Summary judgment in the plaintiffs' favor on standing was therefore granted.

And so it is here. Defendant has admitted that each Plaintiff is a Black resident and registered voter in the area from which members of the Public Service Commission are elected at large. (ECF 62-1 at 1.) As the United States explained in its Statement of Interest, "No more is required for these Plaintiffs to have standing to challenge the at-large scheme." (ECF 86 at 8.)

Defendant has also admitted that Plaintiffs have satisfied the three *Gingles* preconditions (ECF 85-1 at 3-4), the first of which establishes injury. *See Gingles*, 478 U.S. at 50 n.17. And he has admitted that he has "defined responsibilities" in elections for members of the Public Service Commission, which include qualifying candidates, building the databases used to create absentee ballots and to program voting machines, counting the votes, certifying the results, and signing the winner's commission. (ECF 85-1 at 2.) As this Court already determined at the

motion-to-dismiss stage (ECF 36 at 28-33), that is enough to establish traceability and redressability.

Defendant disputes that he "administers" elections for members of the Public Service Commission. (ECF 85-1 at 1-2.) He claims that county election officials "conduct" elections for the Public Service Commission. (*Id.* at 2.) But that is a semantic dispute, not a factual one. It does not create a factual dispute as to the Secretary's undisputed role in those elections. He has stipulated to his role, and that stipulation is enough to establish traceability and redressability.

The Court should therefore grant summary judgment on the issue of standing.

## II.     Binding precedent forecloses Defendant's Eighth Affirmative Defense.

Defendant does not dispute that binding precedent requires the Court to reject his Eighth Affirmative Defense, which alleges that a remedy here would violate states' rights under the Guarantee Clause and the Tenth Amendment. *See City of Rome v. United States*, 446 U.S. 156, 182 n.17 (1980) (holding that the Voting Rights Act does not violate the Guarantee Clause); *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1560-61 (11th Cir. 1984) (holding that the Voting Rights Act does not violate the Tenth Amendment). Instead, he claims that his defense is not "ripe for summary judgment because it involves a question

of first impression that should first be considered by the state courts of Georgia." (ECF 85 at 10.) Not so.

Defendant's Eighth Affirmative Defense does not involve a question of first impression. It involves two questions of federal constitutional law that have long since been decided by the Supreme Court and the Eleventh Circuit. This Court would be bound by those cases no matter what the state courts of Georgia have to say. Defendant does not identify the question he wants the Court to certify, and he does not explain how a state court's ruling on any such question would have any bearing here. Certification would be a waste of time, and the Court should reject it.

## III.  There is no factual dispute about the first *Gingles* precondition.

Defendant admits "that Black voters are sufficiently large and geographically compact to create a district in which they represent a voting majority." (ECF 85 at 12.) He nonetheless argues that this admission isn't enough to establish the first *Gingles* precondition because a remedy that includes single-member districts would violate Georgia's constitution and is therefore not allowed under Section 2 of the Voting Rights Act. He offers no authority for his view of the law, however, and that view conflicts with binding precedent.

In *Solomon v. Liberty County, Florida*, 899 F.2d 1012 (11th Cir. 1990) (en banc) (per curiam) [hereinafter "*Solomon II*"], the plaintiffs challenged the at-large

method of electing members of the county commission and school board. Both bodies consisted of five members elected at large. *Id.* at 1013 (Kravitch, J., specially concurring). The county was divided into five residency districts, and candidates were required to run from the district in which they lived. *Id*. Black residents made up 51 percent of the voting-age population in one of the five residency districts, *id.* at 1014, and the en banc court held that the plaintiffs had therefore established the first *Gingles* precondition *as a matter of law*, *id.* at 1013 (majority opinion).

Here, too, there are five members of the Public Service Commission, and each is elected at large from one of five residency districts. And, just as in *Solomon II*, Plaintiffs have shown—and Defendant does not dispute—that Black citizens already make up a majority of the voting-age population (53.4 percent) in one of those already-existing residency districts. (ECF 85-1 at 3; ECF 79-4 at 16.)[1] Under *Solomon II*, that is enough to establish the first *Gingles* precondition as a matter of law.

---

[1] Plaintiffs have also submitted an Illustrative Plan that is similar to the existing residency districts. (ECF 1-3.) Black voters make up 54.15 percent of the voting-age population in one district in that plan. (*Id.* at 2.) There is no dispute about that plan, which also satisfies the first *Gingles* precondition as a matter of law.

There is no authority for Defendant's view that the first *Gingles* precondition applies differently here. To the contrary, and as this Court has already found, the text of Section 2 applies equally to "any State or political subdivision." 52 U.S.C. § 10301. (*See also* ECF 86, U.S. Statement of Interest at 6 ("The text of Section 2 itself defeats Defendant's argument.").) Under a proper application of the first *Gingles* precondition, then, there is no genuine factual dispute that precludes summary judgment on that issue.

**IV. Defendant misapplies the law on the second and third *Gingles* preconditions.**

Defendant's final argument is that there remains a factual dispute about the cause of polarized voting patterns that precludes summary judgment as to the second and third *Gingles* preconditions. (ECF 85 at 12-19.) But his argument misstates the law and relies on portions of then-Chief Judge Tjoflat's opinion in *Nipper* that did not attract a majority—or even a plurality—of the judges on the en banc court. Those portions of Judge Tjoflat's minority opinion are not the law in this circuit and are not binding on this Court. And when the law is properly applied, the factual dispute evaporates.

The crux of Defendant's argument is that "Section 2 plaintiffs bear the burden of proving that electoral losses are the result of racial bias—not partisan voting patterns." (ECF 85 at 14.) In other words, he says, "Plaintiffs must

demonstrate, at the summary-judgment stage, that there is no genuine issue of material fact that polarization in voting patterns was caused by racial rather than partisan considerations." (*Id.*) He cites three cases to support this statement of the law: *Nipper*; *Solomon v. Liberty County Commissioners*, 221 F.3d 1218 (11th Cir. 2000) (en banc) [hereinafter "*Solomon IV*"]; and *League of United Latin American Citizens v. Clements*, 999 F.2d 831 (5th Cir. 1993) (en banc) ("*LULAC*"). But none of these cases supports his argument.

The pages of Judge Tjoflat's opinion in *Nipper* to which Defendant cites represent only the views of Judges Tjoflat and Anderson.[2] The remaining six judges on the en banc court did not share those views. Although Defendant represents those views as the holding of the "Eleventh Circuit" (ECF 85 at 14-15), they are not. As this Court has already recognized, the only portions of Judge Tjoflat's opinion that constitute binding precedent in the Eleventh Circuit are the portions joined by the concurring opinion of Judge Edmonson. (ECF 36 at 36 n.72.) *See also Ala. State Conf. of the NAACP v. Alabama*, ___ F. Supp. 3d ___,

---

[2] To support his argument, Defendant cites to pages 1523-26 of Judge Tjoflat's *Nipper* opinion. (ECF 85 at 15-18.) All of those pages are in Section II of the opinion, in which only Judge Anderson joined. Judge Edmondson, joined by Judges Cox, Birch, and Dubina, concurred only in parts III(A), III(B), and V of the opinion. 39 F.3d at 1547. Judge Hatchett, joined by Judge Kravitch, dissented. *Id*. Judges Black, Carnes, and Barkett recused themselves and did not participate in the decision. *Id.* at 1496 n.*.

2020 WL 583803, at *13 (M.D. Ala. Feb. 5, 2020) (recognizing that "only those portions of *Nipper* joined in by the four-judge concurrence" are "binding").

*Solomon IV* is no help, either. That case says nothing about the second and third *Gingles* preconditions, because the Eleventh Circuit sitting en banc had previously held that the plaintiffs had established all three preconditions as a matter of law. *See Solomon II*, 899 F.2d at 1013. And, in fact, the evidence upon which the Eleventh Circuit concluded that the plaintiffs had satisfied the second and third *Gingles* preconditions—uncontroverted racial bloc voting analysis—is the same kind of evidence on which Plaintiffs rely here. *See id.* at 1019-21 (Kravitch, J., specially concurring). *Solomon IV* also says nothing about partisanship. Although, like elections for Georgia's Public Service Commission, the Liberty County elections at issue were held on a partisan basis, *see Solomon v. Liberty County, Florida*, 865 F.2d 1566, 1569 (11th Cir. 1988) [hereinafter "*Solomon I*"], *vacated*, 873 F.2d 248 (11th Cir. 1989), neither "partisanship" nor "partisan" appears anywhere in the *Solomon IV* opinion. *Solomon IV* merely affirms the district court's conclusion, based on the totality of circumstances, that the at-large elections at issue there did not violate Section 2. *Solomon IV*, 221 F.3d at 1220, 1224, 1235.

Judge Higginbotham's opinion in *LULAC* also did not change the plaintiffs' burden under the second and third *Gingles* preconditions. The Fifth Circuit held only that the district court erred when it refused to consider the nonracial causes of voting preferences offered by the defendants at trial. 999 F.2d at 850-51. It did not purport to change the second or third *Gingles* preconditions, and that is evident in later decisions of the Fifth Circuit applying the standards set out in *Gingles*. *See, e.g.*, *Harding v. Cnty. of Dall., Tex.*, 948 F.3d 302, 308 (5th Cir. 2020) (Higginbotham, J.); *League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist.*, 123 F.3d 843, 847-48 (5th Cir. 1997) (Higginbotham, J.); *Clark v. Calhoun Cnty., Miss.*, 88 F.3d 1393, 1395 (5th Cir. 1996) (Higginbotham, J.); *Houston v. Lafayette Cnty., Miss.*, 56 F.3d 606, 611-12 (5th Cir. 1995). Thus, while *LULAC* stands for the proposition that courts in the Fifth Circuit must consider a defendant's causation evidence in its totality-of-circumstances analysis, it does not support Defendant's claim here that Plaintiffs must prove causation to establish the second and third *Gingles* preconditions. As the United States explained, "the abstract issue of how race and partisanship interact … does not go to whether a plaintiff has met the second and third *Gingles* preconditions." (ECF 86 at 5 n.1.)

In fact, all that Plaintiffs must prove to establish the second and third preconditions is what the Supreme Court set out in *Gingles*: that Black voters are

"politically cohesive" and that "the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances … —usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 51; *accord League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 425 (2006); *Johnson v. De Grandy*, 512 U.S. 997, 1006-07 (1994); *Growe v. Emison*, 507 U.S. 25, 40 (1993).

*Solomon II* shows that Plaintiffs have done just that. The plaintiffs in that case established the second *Gingles* precondition as a matter of law by showing with uncontroverted statistical evidence that Black voters supported their preferred candidates with between 75 and 100 percent of their votes. *Solomon II*, 899 F.2d at 1019. They established the third *Gingles* precondition as a matter of law by showing that nearly 80 percent of whites, on average, voted against the losing Black-preferred candidates and that white crossover never exceeded 40.5 percent. *Id.* at 1020-21.

Here, Plaintiffs are relying on Defendant's admissions that "Black voters in Georgia have been politically cohesive in general elections for members of the Public Service Commission between 2012 and the present" and that "[c]andidates preferred by Black voters have been defeated in elections for the Public Service Commission between 2012 and the present and were not supported by a majority of white voters in those elections." (ECF 85-1 at 5-6.) Plaintiffs also rely on

undisputed statistical evidence that Black voters supported their preferred candidates with between 79 and 98 percent of their votes. (*Id.* at 6, 14; *see also* ECF 79-4 at Table 1.) The undisputed evidence also shows that greater than 80 percent of white voters, on average, voted against the losing Black-preferred candidates and that white crossover voting never exceeded 24.28 percent. (ECF 85-1 at 11, 13, 14; *see also* ECF 79-4 at Tables 1 & 2.) Under *Solomon II*, Defendant's admissions and the undisputed evidence establish the second and third *Gingles* preconditions as a matter of law.

Defendant also relies on two recent Eleventh Circuit decisions for the proposition that "summary judgment should not be granted to plaintiffs especially when partisanship-versus-race issues are raised." (ECF 85 at 13-14 (citing *Ga. State Conf. of the NAACP* v. *Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1347-48 (11th Cir. 2015); and *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 657 F. App'x 871, 872 (11th Cir. 2016) (per curiam).) But this reliance is misplaced. *Fayette County* involved a grant of summary judgment—not partial summary judgment—when there was a genuine factual dispute over the first *Gingles* precondition and the totality of circumstances. 775 F.3d at 1347-48. It makes no special point about partisanship-versus-race issues and merely stands for the unremarkable proposition that a court must not make credibility determinations

when deciding a motion for summary judgment. The *Wright* case, in which the district court had granted summary judgment—not partial summary judgment—for *the defendant*, stands for the same proposition. 657 F. App'x at 872-73. The Eleventh Circuit reversed because there was a genuine factual dispute over the third *Gingles* precondition. And, as in *Fayette County*, the court made no special point about partisanship-versus-race issues.[3]

Here, in contrast, there is no credibility to weigh and no genuine factual dispute over the second and third *Gingles* preconditions. Defendant points to his expert's testimony on partisanship-versus-race issues as evidence of a dispute (ECF 85 at 12), but, as discussed above, his argument depends on a misstatement of the law. Thus, while his expert's disputed opinions about partisanship might be relevant to the Court's totality-of-circumstances analysis on which Plaintiffs have *not* sought summary judgment, they do not create a genuine factual dispute about the second and third *Gingles* preconditions. Under *Solomon II*, this Court should therefore conclude that Plaintiffs have satisfied those preconditions as a matter of law.

---

[3] Partisanship was not an issue in *Wright*, which involved nonpartisan elections for a county school board. *See Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1300 (11th Cir. 2020).

Dated: July 30, 2021

*/s/ Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
P.O. Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

Nicolas L. Martinez (*pro hac vice*)
Wesley A. Morrissette (*pro hac vice*)
Bartlit Beck LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
Email: nicolas.martinez@bartlitbeck.com
Email: wesley.morrissette@bartlitbeck.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing document has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Bryan L. Sells
Bryan L. Sells