**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RICHARD ROSE, *et al.*

    *Plaintiffs,*

    v.

BRAD RAFFENSPERGER, in his
official capacity as Secretary of State
of the State of Georgia,

    *Defendant.*

CIVIL ACTION
CASE NO. 1:20-cv-2921-SDG

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs cannot survive the Secretary's Motion for Summary Judgment because, now that they are required to put forward evidence in support of their claims, they cannot show an injury in the context of statewide elections. But even if they could, they have no evidence showing this Court could redress any alleged injury through the exercise of its authority on the parties to this action. At best, any remedy would essentially turn the Public Service Commission (PSC) into an appointed body.

Further, even if this Court finds injury and redressability in the Plaintiffs' case, summary judgment should still be granted to the Secretary

1

because nothing in Plaintiffs' response changes the fact that the requested relief requires this Court to alter the form of government of a sovereign state. And when the Plaintiffs have failed to put forth evidence showing a reasonable alternative benchmark for such action, this Court should decline to exercise this weighty authority, to the extent it possesses it at all.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  Plaintiffs have not demonstrated injury.

The Secretary does not dispute that Plaintiffs *alleged* an injury typical of Section 2 claims, and one that has been accepted by courts since the inception of the Voting Rights Act. That was sufficient for surviving a motion to dismiss. But now at summary judgment, what Plaintiffs have failed to do through discovery is *show* the existence of the injury they earlier alleged. This is in part because, as explained in the Secretary's principal brief, [Doc. 80-1], the injury is partisan in nature and that characterization has not been sufficiently rebutted by Plaintiffs because they cannot point to evidence that supports the concept that racial bias in the community is excluding them from the political process. *Nipper v. Smith*, 39 F.3d 1494, 1524 (11th Cir. 1994) (en banc); *see also* [Doc. 85, pp. 14-18].

Plaintiffs also argue that the statewide character of the injury is a "distinction without a difference," and claim the Secretary has "fail[ed] to

2

explain why it matters or how the injury in this case is conceptually any different from the plaintiffs' injuries in *Gingles, Wright, Meek, Solomon, or Marengo County*." [Doc. 84, p. 4]. But Plaintiffs can point to no case supporting their theory that statewide injuries are the same as county subdivisions. And the Department of Justice likewise cites no case that attempted to convert statewide elected officials into district-based officials. [Doc. 86, pp. 4-8].

Moreover, Plaintiffs incorrectly contend that "[n]one of Defendant's cases even suggest there is a difference." [Doc. 84, p. 5]. Plaintiffs make this claim by minimizing the holdings in *Ala. State Conference of the NAACP v. Alabama*, 2020 U.S. Dist. LEXIS 18938, at \*36 (M.D. Ala. Feb. 5, 2020) ("*Alabama NAACP*") and *Holder v. Hall*, 512 U.S. 874 (1994), two cases that demonstrate the uniqueness of statewide contests and a state's chosen form of government, respectively. The similarities between those cases and the case at bar are striking, as the Secretary explained in his principal brief. In order to brush aside the import of *Holder* and *Alabama NAACP*, Plaintiffs focus on the fact that the remedy requested is slightly different because, rather than requesting a majority-minority district in a five-member commission, as Plaintiffs do here, the plaintiffs in *Holder* requested it by modifying a one-member commission. The Department of Justice makes a similar argument, attempting to cabin *Holder* to the size of the elected body. [Doc. 86, pp. 11-13].

But the relevant question for this Court raised in both *Alabama NAACP* and *Holder* is not whether a commission is being expanded or contracted by the relief requested, but whether the relief requested requires a federal court to alter a constitutionally prescribed office—because if it does, it implicates the sovereign authority of the state. Here, as in *Holder,* it does.

Given the specialized arena of utility regulation—a topic Plaintiffs dismiss because Commissioners do not have to have specialized training—the State of Georgia has chosen a particular method of government. Plaintiffs do not ask this Court merely to impose districts. They ask this Court to alter the form of government, despite the "legal effects" of their claim to proving the *Gingles* factors. *Solomon v. Liberty Cty.*, 899 F.2d 1012, 1013 (11th Cir. 1990). The Court should decline that invitation.

## II.    Plaintiffs have not established redressability.

Plaintiffs next accuse the Secretary of "conjur[ing] up a hypothetical scenario in which the Governor (and presumably his successors) would defy a ruling of this Court, act 'directly contrary' to law, and impose 'indefinitely' an 'effective appointment system' that Defendant admits would 'violat[e]' the Georgia Constitution." [Doc. 84, p. 7]. Plaintiffs also claim the Secretary has misread the relevant statute because the Governor's appointment authority "extends only to the 'next regular general election.'" *Id.* at 8 (quoting O.C.G.A.

4

§ 46-2-4). Finally, the Plaintiffs ignore the requirement on this Court by stating that, even if Plaintiffs' version of events plays out, this Court would have "the 'unwelcome obligation' of crafting an interim remedy for use until the legislature adopted a lawful replacement for Defendant to administer." *Id.* quoting *Perry v. Perez,* 565 U.S. 388, 392 (2012) (per curiam). Each of these points made by Plaintiffs regarding redressability are categorically incorrect.

**A.    O.C.G.A. § 46-2-4 does not bar continuing gubernatorial appointments of commissioners to remedy ongoing commission vacancies as a result of an Order from this Court.**

Plaintiffs' claim that the Governor would not have authority to continue to appoint commissioners to fill vacancies falls flat when viewed in the context of what an order from this Court would actually entail. As the Defendant has already explained, "'[F]ederal courts have no authority to erase a duly enacted law from the statute books.'" *Jacobson v. Fla. Sec'y of State*, 974 F. 3d 1236, 1255 (11th Cir. 2020) (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 936 (2018)). Instead, federal courts enjoin particular officials from carrying out particular statutes." [Doc. 80-1, p. 10]. And because Plaintiffs have not joined all the required parties to this action, they have a redressability problem: this Court is limited to enjoining the Secretary.

Plaintiffs further claim that the Governor would be "defy[ing] an Order of this Court" and "act[ing] directly contrary to law" if he were to continue appointing commissioners to fill vacancies. Presumably that is because he is limited by law to appointments only until the next regular election. Despite Plaintiffs' manufactured disagreement on this issue, neither party disputes this. But under Plaintiffs' request for relief, the next regular election would simply not take place because the Secretary, by order of this Court, would be enjoined from administering it using a statewide method of election. *The order would apply to no other party.* Thus, once that election failed to produce a commissioner, it would again be incumbent upon the Governor to fill the vacancy "until the next regularly scheduled election," which would occur six years later for that seat. This in no way would "defy a ruling of this Court," because the order, by its terms and by the Plaintiffs' strategic decision not to join the Governor as a party, applies only to the Secretary. Plaintiffs' argument to the contrary "rests on the flawed notion that by declaring [a]… statute [unlawful], it eliminate[s] the legal effect of the statute in all contexts." *Jacobson*, 974 F. 3d at 1255.

6

**B.    Plaintiffs' redressability problem bars this Court from crafting a district-based remedy in the absence of one created by the legislature.**

Plaintiffs rely on *Perry v. Perez* for the proposition that the Court may craft a majority-minority district to remedy Plaintiffs' alleged injuries. 565 U.S. 388 (2012). But that case is inapposite to the one now before this Court. Whether a court may draw a map to satisfy the requirements of the Voting Rights Act is not at issue. Courts have long done exactly that, and the Secretary does not challenge that longstanding practice here. The problem is the inherent limitation of this Court's authority as a result of Plaintiffs' decisions on which entities to sue. Plaintiffs chose not to sue any officials except the Secretary of State.

This was not an issue in *Perez,* which was a Section 5 redistricting challenge, because the plaintiffs in that action joined, in addition to the Secretary of State, the Governor and the Attorney General. Thus, the Court there had properly before it all the parties required to put the Court's order into effect. Put differently, it was "*the effect of the court's judgment on the defendant[s]*—not an absent third party—that redresse[d] the plaintiff's injury." *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019). Here, Plaintiffs have no such cohort of defendants, and neither does the Court.

7

### III. Plaintiffs have still not shown a plausible remedy that overcomes the State's interest.

The State's interest in maintaining its form of government in the election of PSC Commissioners is far higher than the typical redistricting case or one involving the election of county officials. And this Court must look at the plausibility of the remedy as part of its consideration of Plaintiffs' claims. Plaintiffs claim there exists an "alternative benchmark" to measure their proposed remedy against, saying "[t]hat benchmark is a five-member commission elected from single-member districts." [Doc. 84, p. 14]. They claim, "the evidence in this case shows that if Georgia used single-member districts in electing Commissioners, the majority-Black District 3 would have successfully elected Black-preferred candidate in the last three general and runoff elections." *Id.* But far from evidence (and even if Plaintiffs could predict the result when campaign strategy and tactics would have been different in a district-based election), this statement is irrelevant to the question of a potential remedy—the cases considering judicial elections could likewise show potential success of Black-preferred candidates. The question is whether the Court can "fashion a permissible remedy in the particular context of the challenged system." [Doc. 36, p. 34] (quoting *Nipper*, 39 F.3d at 1530-31).

Since at least 1906 and certainly since the PSC became a constitutional office, the elections have always been statewide. [Doc. 80-1, pp. 16-17]. The question is not whether Plaintiffs can invent something that gives them the electoral outcomes they seek—it is whether they can overcome the State's interest in how it regulates utilities, including the unique functions entrusted to the PSC. [Doc. 80-1, pp. 16-17].

Because of this factor and the others already discussed in this brief, the Court should decline the invitation to alter Georgia's chosen form of utility regulation. Plaintiffs cannot demonstrate that their approach of forcing "a new model of government," *Nipper*, 39 F.3d at 1531, is necessary or appropriate in this case.

## CONCLUSION

While this Court found that Plaintiffs' Complaint sufficiently pleaded a claim under the Voting Rights Act, their claims cannot stand in the face of their evidentiary burden. The undisputed facts demonstrate that Georgia should be able to continue its chosen form of utility regulation without interference from federal courts. This Court should grant the Secretary's motion for summary judgment.

Respectfully submitted this 30th day of July, 2021.

**STATE LAW DEPARTMENT**

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene S. McGowan
Assistant Attorney General
Georgia Bar No. 697316
40 Capitol Square, S.W.
Atlanta, Georgia 30334

**TAYLOR ENGLISH DUMA LLP**

*/s/Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 770.434.6868

*Counsel for Defendant*

10

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Bryan P. Tyson
Bryan P. Tyson