## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD ROSE, *et al.*,

      Plaintiffs,

               v.

BRAD RAFFENSPERGER, in his capacity as Secretary of State of the State of Georgia,

      Defendant.

Civil Action No.
1:20-cv-02921-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' motion to enjoin Defendant, the Secretary of State for the State of Georgia, from qualifying candidates for the 2022 election for commissioner to the Georgia Public Service Commission (PSC) until a final judgment in this case has been entered. The motion has been fully briefed and the Court held an evidentiary hearing on February 25, 2022. After careful consideration, the Court concludes that Plaintiffs have not carried their heavy burden to show that an injunction should issue. Accordingly, the Motion for Preliminary Injunction [ECF 101] is **DENIED**.

## I.     Background

The Court has already issued an Order ruling on the parties' cross-motions for summary judgment, which addresses the factual and procedural history of this

litigation.[1] For present purposes, it is sufficient to note that Plaintiffs filed their motion for preliminary injunction on February 3, 2022—after that Order issued.[2] Plaintiffs assert that they would suffer irreparable harm "if the 2022 elections were allowed to proceed using a method that violates Section 2 of the Voting Rights Act."[3] Secretary Raffensperger opposes the motion, arguing that Plaintiffs are not merely seeking to preserve the status quo but to "interrupt the election process" before a final judgment.[4]

## II.   Applicable Legal Standard

To obtain preliminary injunctive relief, Plaintiffs must show "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Such injunctions are "an extraordinary and drastic remedy not to be granted

---

[1]   ECF 97.

[2]   ECF 101.

[3]   *Id.* at 1.

[4]   ECF 105.

unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Moreover, when a party seeks to affirmatively enjoin a state governmental agency, the "case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own affairs." *Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362, 1372 (N.D. Ga. 2002) (citing *Rizzo v. Goode*, 423 U.S. 362, 378–79 (1976)).

## III.    Discussion

Plaintiffs assert that they have already established the three *Gingles* preconditions and that the Eleventh Circuit recognizes "it will be only the very unusual case" in which a Section 2 violation cannot be established when those conditions have been met.[5] Plaintiffs are correct that the Court concluded they have satisfied the "three basic *Gingles* prerequisites" of geographic compactness, political cohesion, and racial bloc voting.[6] This ignores, however, claim-dispositive matters on which the Court declined to rule at summary judgment. Plaintiffs did

---

[5]    ECF 101, at 1–2 (emphasis omitted) (citing *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1304 (11th Cir. 2020)).

[6]    ECF 97, at 24. *See generally id.* at 24–32.

not present sufficient evidence during the hearing to establish a likelihood of success on those issues.

### A.   Substantial Likelihood of Success

#### 1.   Plaintiffs' Proposed Remedy

Plaintiffs have not shown that their proposed remedy is feasible. "[A] plaintiff must propose a viable and proper remedy in order to establish a prima facie case under Section Two." *Davis v. Chiles*, 139 F.3d 1414, 1419–20. *See also id.* at 1423 (citations omitted). Although Plaintiffs' counsel characterized the proposed remedy as a factor to be considered under the totality of the circumstances,[7] as the Court explained in its summary judgment order, Eleventh Circuit precedent makes the feasibility of the remedy relevant to both the first *Gingles* precondition *and* the totality analysis.[8] Whether Georgia's interest in maintaining this system of elections for the PSC can alone "override[ ] the rest of Section 2," as Plaintiffs' counsel put it,[9] is irrelevant. The State's interests must be considered in light of the evidence in support of or against *each* of the *Gingles* preconditions *and* the Senate Factors.

---

[7]   *See, e.g.*, ECF 108, at 62–63.

[8]   ECF 97, at 16–17 (citing *Davis*, 139 F.3d at 1421; *Nipper v. Smith*, 39 F.3d 1494, 1531 (11th Cir. 1994)).

[9]   *Id.* at 63.

Moreover, a viable remedy is necessary for Plaintiffs to have constitutional standing. If the remedy is not feasible, Plaintiffs have not suffered an injury that gives them standing to sue.[10] *Id.* at 1419–20. There cannot be a substantial likelihood of success on a claim for which standing may be lacking.

Nothing presented by Plaintiffs during the hearing resolves those mixed issues of fact and law that the Court found inappropriate for resolution at summary judgment.[11]

## 2.    Totality of the Circumstances

To find a Section 2 violation, the statute requires that the Court consider the totality of the circumstances. 52 U.S.C. § 10301(a). And the Court has already held that it cannot appropriately evaluate the totality of the circumstances before trial.[12] The evidence presented by Plaintiffs during the hearing does not change the Court's analysis in this regard.

The Court cannot conclude based on the evidence presented that Plaintiffs have shown a likelihood of success under the totality of the circumstances. Specifically, at present, evidence related to at least the third, sixth, and eighth

---

[10]   *Id.* at 8–12.

[11]   *Id.* at 8–12, 16–20.

[12]   *See, e.g.*, *id.* at 24.

Senate Factors do not currently weigh in Plaintiffs' favor. This does not mean Plaintiffs will be unable to satisfy these factors at trial. But that is a determination that requires a complete record—and that record is not yet complete.

> **i.   Third Senate Factor: The Extent to Which the State Has Used Voting Practices or Procedures that May Enhance the Opportunity for Discrimination Against the Minority Group.**

Plaintiffs point to the State's use of staggered terms, a majority-vote requirement, and unusually large voting districts for PSC elections as practices that increase the chances for discrimination against Black voters.[13] But Plaintiffs have not presented any evidence showing that these practices create opportunities for discrimination in connection with elections for members of the PSC. Further, describing the entire State as an "unusually large election district" is not helpful in this context. Large electoral districts can be used to undermine one-person, one-vote requirements, or to pack or crack minority populations. The State's borders are not at risk of being drawn in ways that permit any of these problematic practices to be implemented.

Even if the Court were ultimately to find a violation of Section 2 and require PSC elections to take place using single-member districts, no one has challenged

---

[13]   ECF 101, at 12; ECF 108, at 80–82.

the use of staggered terms or the majority-vote requirement with regard to the PSC. That is, Plaintiffs have never argued that the remedy the Court should implement must un-stagger the terms PSC members serve or require a plurality vote.

> ii.   **Sixth Senate Factor: Whether Political Campaigns Have Been Characterized by Overt or Subtle Racial Appeals.**

Plaintiffs pointed to two recent examples of discriminatory appeals in the 2020 exogeneous elections for Georgia's United States Senate seats.[14] Without drawing any conclusions as to who is responsible for those appeals, there is no mistaking that they are offensive. But the Court finds that these two examples are simply not sufficient to show that political campaigns in Georgia are "characterized" by such odious appeals.

> iii.   **Eighth Senate Factor: Whether There Is a Significant Lack of Responsiveness on the Part of Elected Officials.**

During the hearing, two of the Plaintiffs (Brionté McCorkle and Rev. James Major Woodall) credibly testified about the PSC's lack of responsiveness to Black voters. They specifically identified several areas in which such a lack of responsiveness was evident to them: climate change and other environmental

---

[14]   ECF 84-3; ECF 108, at 88–92.

justice matters; rate increases and the utility disconnection moratorium triggered by the pandemic; and cost overruns and construction delays related to Plant Vogtle.[15] Some of these issues, while important, are not within the aegis of the PSC.[16] A lack of responsiveness about such matters therefore carries little weight in the analysis the Court must make.

None of this testimony, moreover, necessarily demonstrates a lack of responsiveness to Black voters in particular. Rather, many of these issues are ones that would seem to be of special concern based on socio-economic factors rather than race. Plaintiffs did not present any evidence showing that the effect on Black voters is somehow different from the effect these issues would likely have on anyone who is economically disadvantaged.[17] Nor did Plaintiffs present specific data demonstrating that these issues affect Black Georgians more or differently than white ones.[18] The Court does not doubt that these issues are important to many Black voters, just as they may be important to many voters of all races. But

---

[15]   ECF 108, at 29, 31–36, 49–51.

[16]   Id. at 42–43 (Ms. McCorkle acknowledging that the PSC does not regulate air pollution or coal plant emissions).

[17]   ECF 108, at 40–42.

[18]   *Id.*

the unresponsiveness of the PSC without regard to the race of the voters is not the correct inquiry.

### B.  Irreparable Harm

The parties do not appear to dispute that vote dilution which contravenes Section 2 can cause irreparable harm. But it is by no means clear here that such a violation has occurred or is substantially likely to occur. Although it is unnecessary for the Court to assess whether Plaintiffs face irreparable harm in light of that conclusion, evidence presented during the hearing demonstrates that Plaintiffs do not face imminent irreparable harm absent an injunction.

As discussed during the hearing on Plaintiffs' motion, this case is already set for a bench trial to begin on June 27, 2022.[19] That is well before the general election set to take place on November 8.[20] The Court scheduled trial sufficiently in advance of the election for the very purpose of entering a ruling on a complete record. If, after trial, Plaintiffs prevail on their Section 2 claim, they will still have an opportunity to obtain injunctive relief related to the 2022 election cycle.[21] In light of this, Plaintiffs do not face the immediate prospect of irreparable harm.

---

[19]   ECF 99; ECF 100.

[20]   ECF 110, at 9.

[21]   ECF 108, at 24–25 (testimony of Michael Barnes, Director of the Center for Election Systems, Office of Secretary of State).

IV.     **Conclusion**

Because Plaintiffs have not carried their burden to show a substantial likelihood of success on the merits, and will not suffer irreparable harm absent an injunction at this stage, the Court **DENIES** the Motion for Preliminary Injunction [ECF 101].

SO ORDERED this 7th day of March, 2022.

Steven D. Grimberg
United States District Court Judge