# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RICHARD ROSE et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, <br><br> Defendant. | Civil Action No. 1:20-cv-02921-SDG |

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to Rules 15(a) and (b) of the Federal Rules of Civil Procedure, Plaintiffs Brionté McCorkle, Wanda Mosley, Richard Rose and James "Major" Woodall respectfully move this Court for leave to amend their Complaint. A copy of the Amended Complaint is attached hereto as **Exhibit A**. For the Court's convenience, the plaintiffs also attach a redline of the proposed amendments as **Exhibit B**.

## INTRODUCTION

After nearly two years on appeal, this case is finally back in front of this Court. In all that time, the only supposed deficiency the Eleventh Circuit has identified with this Court's well-reasoned decisions is that it should have required the plaintiffs at the liability phase to propose alternative remedies "within the confines of the state's chosen model of government"—i.e., "five statewide commissioners." (ECF 178 at 18, 29.)

That is an easy fix. And the plaintiffs' Amended Complaint does just that by plausibly alleging that "[t]here are numerous remedies that could be adopted within the confines of a statewide system of elections for five Public Service Commissioners that would not alter Georgia's chosen form of government," including "cumulative voting, limited voting, and ranked-choice or single transferable voting." (Ex. A ¶ 17.) These are the same well-established remedies that the United States, supporting the plaintiffs on appeal, explained "would allow Georgia to retain a statewide method of electing Commission members." (United States Amicus Br. at 24, *Rose v. Ga. Sec'y of State*, No. 22-12593 (11th Cir. Oct. 26, 2022), ECF 44.) Although the Eleventh Circuit chose not to address those potential remedies, this Court should do so now by granting leave to amend.

Amendment would not be futile because this Court has already found in the plaintiffs' favor on the core issue in this case: whether Georgia's existing statewide system of elections for Public Service Commission ("PSC") results in racial vote dilution in violation of Section 2 of the Voting Rights Act of 1965. The Eleventh Circuit's ruling on a narrow legal question pertaining to the menu of potential remedies is easily cured and does not undermine this Court's ultimate finding of liability—a finding this Court made following a week-long bench trial in which it admitted more than 100 exhibits into evidence and heard testimony from more than a dozen witnesses, including three experts.

As Judge Rosenbaum explained in her dissent from the denial of rehearing en banc—and Judge Branch did not dispute in her statement respecting that denial—the Eleventh Circuit panel "did not disagree with" this Court's careful "factual findings." (ECF 183 at 26 (Rosenbaum, J., dissenting from denial of rehearing en banc).) "Nor did it disagree with [this Court]'s conclusion that the existing PSC elections result in racial bloc voting that prevents Black voters in Georgia from electing their preferred candidates to the PSC." (*Id.*) Rather, because the panel "decide[d] this appeal on the remedy requirement at the first *Gingles* precondition" only, it did "not consider the Secretary's argument that the district court's finding of racial vote dilution was clearly erroneous" and did "not proceed

3

to analyze the 'Senate factors' at *Gingles*'s totality of the circumstances stage." (ECF 178 at 19 n.11.) Thus, the narrow legal ground on which the panel reversed leaves intact the vast majority of this Court's 64-page trial decision.

Furthermore, this is the plaintiffs' first request to amend, it is not the result of any undue delay on the plaintiffs' part, and amendment would not prejudice the Secretary, who has already called off PSC elections for 2024. Failure to grant leave, however, would unfairly prejudice the plaintiffs, who have litigated this case diligently for four years and whose claims this Court has already found meritorious after a full trial. This Court should grant the plaintiffs' motion.

## BACKGROUND

This is a voting-rights challenge to the method of electing members of Georgia's Public Service Commission. The PSC consists of five commissioners who make decisions collectively about energy policy that affect all Georgians, including Black residents who comprise more than one-third of the State's population. Ga. Const. art. IV, § 1, ¶ I(a). According to state statute, members of the PSC are "elected state wide" in staggered at-large elections. O.C.G.A. § 46-2-1(a), (d). Only one Black person has ever been elected to the Commission in its almost 150-year history.

The plaintiffs—a group of Black Georgians—sued Secretary of State Brad Raffensperger in July 2020, alleging that Georgia's PSC elections dilute Black voting strength in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. In August 2022, after more than two years of litigation and a week-long bench trial, this Court issued a 64-page decision ruling that Georgia's at-large method of electing Public Service Commissioners violates Section 2. (ECF 151.)

To reach that conclusion, the Court applied the well-established framework from *Thornburg v. Gingles*, 478 U.S. 30 (1986). That framework requires a Section 2 plaintiff to satisfy three "preconditions" before showing, under "the totality of circumstances," "that the political process is not 'equally open' to minority voters." *Allen v. Milligan*, 599 U.S. 1, 18 (2023) (citation omitted). Over the last forty years, courts have "applied *Gingles* in one § 2 case after another, to different kinds of electoral systems and to different jurisdictions in States all over the country." *Id.* at 19.

As to the first *Gingles* precondition, the Court found that it "was undisputed that Black voters are a sufficiently large and geographically compact group in current-day Georgia to constitute at least one single-member district in which they would have the potential to elect their representative of choice in district-based

PSC elections." (ECF 151 at 35.) After finding that the plaintiffs had also satisfied the remaining two *Gingles* preconditions based largely on undisputed evidence, the Court examined each of the nine so-called Senate Factors as part of its totality-of-circumstances analysis. It found that six of the nine, including the two factors that *Gingles* instructs are "most important," weighed in the plaintiffs' favor. (*Id.* at 36-54.)

Because the Secretary had argued that the first *Gingles* precondition also required the plaintiffs to prove a "viable remedy," the Court addressed whether they had done so. (*Id.* at 54-58.) The Court found that single-member districts were a viable remedy and that the Secretary had "conceded that there [was] nothing 'facially problematic' with the [plaintiffs'] proposed map." (*Id.* at 57 (citation omitted).) Citing *Gingles*, the Court explained that single-member districting is "a standard remedy for a Section 2 violation caused by at-large elections." (*Id.* at 57.)

The Court permanently enjoined the Secretary from administering future PSC elections using the at-large method and gave the Georgia General Assembly an opportunity to devise a remedy of its choosing at its next regular session beginning in January 2023. The Secretary appealed, and the legislature took no action during the 2023 legislative session.

In late November 2023, a panel of the Eleventh Circuit reversed this Court's judgment on the sole ground that the plaintiffs had "offer[ed] only a single, dramatic remedy"—electing PSC members from single-member districts—which the panel found not viable given the State's asserted interest in maintaining at-large elections for the PSC. (ECF 178 at 10.) The panel therefore concluded that the plaintiffs "cannot satisfy the first *Gingles* precondition as we understand it." (*Id.* at 34.)

Relying on circuit opinions about elections of trial judges and "general principles of federalism," the panel held that implicit in the first *Gingles* precondition is a requirement that Section 2 plaintiffs "propose a remedy within the confines of the state's chosen model of government when bringing [a vote-dilution] claim." (*Id.* at 20, 23-24, 29 (citing *Nipper v. Smith*, 39 F.3d 1494, 1531 (11th Cir. 1994) (en banc); *SCLC v. Sessions*, 56 F.3d 1281, 1294 & 1298 (11th Cir. 1995) (en banc); and *Davis v. Chiles*, 139 F.3d 1414, 1423 (11th Cir. 1998)). The panel applied those precedents for the first time to a policymaking administrative body such as the PSC and concluded that single-member districts failed the panel's test because "Georgia chose the statewide electoral model for the PSC, and plaintiffs' proposed remedy would alter that choice in contravention of the principles of federalism." (*Id.* at 31.) This Court's earlier conclusion that the

7

plaintiffs had satisfied the first *Gingles* precondition with a proposal for single-member districts was thus "a mistake of law" requiring reversal. (*Id.* at 19, 34.)

At the same time, the panel did not "suggest that Section 2 plaintiffs could never prevail when asserting a Section 2 vote dilution claim against a statewide body." (*Id.* at 29.) Nor did the panel address the alternative remedies within the confines of a statewide electoral system—such as cumulative voting, limited voting, or ranked-choice voting—detailed in the amicus brief submitted by the United States.[1] (United States Amicus Br. at 25, *Rose v. Ga. Sec'y of State*, No. 22-12593 (11th Cir. Oct. 26, 2022), ECF 44.) And because the panel "decide[d] this appeal on the remedy requirement at the first *Gingles* precondition," it did "not consider the Secretary's argument that the district court's finding of racial vote dilution was clearly erroneous" and did "not proceed to analyze the 'Senate factors' at *Gingles*'s totality of the circumstances stage." (ECF 178 at 19 n.11.) The panel left those findings undisturbed.

Shortly after the panel issued its ruling, a judge of the Eleventh Circuit requested a poll on whether to rehear the case en banc, and the court's mandate

---

[1] The amicus brief submitted by FairVote and other voting organizations in support of the plaintiffs' petition for a writ of certiorari before the Supreme Court further discussed the viability of alternative remedies for the vote-dilution here. (*See* FairVote, et al. Amici Br. at 17-23, *Rose v. Raffensperger*, No. 23-1060 (S. Ct. Mar. 29, 2024); GCVEF Amicus Br. at 7-21, *Rose v. Raffensperger*, No. 23-1060 (S. Ct. Apr. 26, 2024); Const. Law Scholars Amici Br. at 16, *Rose v. Raffensperger*, No. 23-1060 (S. Ct. Apr. 26, 2024); Sierra Club Amicus Br. at 17-20, *Rose v. Raffensperger*, No. 23-1060 (S. Ct. Apr. 26, 2024).)

was withheld for almost seven months pending resolution of that poll.[2] (ECF 179.) On July 10, 2024, the Eleventh Circuit denied rehearing. (ECF 183.) Judge Branch, joined by Judge Grant, issued a statement respecting the denial of rehearing in which she confirmed that "the district court had committed an error of law by failing to properly apply our precedent regarding the first *Gingles* precondition" and that the panel's holding "was based entirely on the impermissibility of plaintiffs' proposed remedy." (*Id.* at 4, 8 n.7.) Judge Branch also emphasized that the panel's ruling did not mean "that Section 2 plaintiffs could never prevail when asserting a Section 2 vote dilution claim against a statewide body." (*Id.* at 9 (quoting *Rose v Sec'y, State of Ga.*, 87 F.4th 469, 484 (11th Cir. 2023)).)

Judge Wilson and Judge Rosenbaum, joined by Judge Jill Pryor, dissented from the denial of rehearing. As relevant here, Judge Rosenbaum pointed out that "the panel did not disagree with the district court's factual findings." (*Id.* at 26.) "Nor did it disagree with the district court's conclusion that the existing PSC elections result in racial bloc voting that prevents Black voters in Georgia from electing their preferred candidates to the PSC." (*Id.*)

---

[2] In the meantime, the plaintiffs filed a petition for a writ of certiorari in the Supreme Court. The Supreme Court denied the petition on June 24, 2024—three weeks before the Eleventh Circuit denied rehearing. *See Rose v. Raffensperger*, No. 23-1060, 2024 WL 3089563 (S. Ct. June 24, 2024). The plaintiffs intend to file a petition for rehearing in the Supreme Court in light of the opinions accompanying the Eleventh Circuit's denial of rehearing en banc.

9

The Eleventh Circuit's mandate issued a week later. (Mandate Issued *Rose v. Ga. Sec'y of State*, No. 22-12593 (11th Cir. July 18, 2024), ECF 74.) This motion followed on that same day.

## LEGAL STANDARD

Under Rule 15(a), the Court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts freely give leave to amend unless "amendment would prejudice the defendant, follows undue delays, or is futile." *Scottsdale Ins. Co. v. Wood*, No. 1:22-cv-03217-LMM, 2023 WL 3690433, at *1 (N.D. Ga. Mar. 30, 2023) (quoting *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999)). "[T]he mere fact that plaintiffs did not seek leave to amend until after judgment was entered does not necessarily constitute 'undue delay' sufficient to justify denying a postjudgment motion seeking leave to amend." *Mayes v. 490 Habitat, Inc.*, No 18-cv-1427 (SJF), 2020 WL 587112, at *2 (E.D.N.Y. Feb. 6, 2020) (granting leave to amend post-judgment).

Indeed, parties may file amended pleadings after remand when those pleadings are consistent with the judgment of the appellate court. *See* 6 Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 1489 n.25 (3d ed.) (quoting *Jones v. St. Paul Fire & Marine Ins. Co.*, 108 F.2d 123, 125 (C.C.A. 5th Cir. 1939) ("The parties were free on such a reversal to introduce other evidence and to present by

amendment new issues, if not inconsistent with what the appellate court had adjudged.")). Courts have additionally allowed leave to amend post-judgment when the amendment simply pleads an alternative theory of recovery. *See Foman v. Davis*, 371 U.S. 178, 182 (1962), (allowing amendment after judgment because "the amendment would have done no more than state an alternative theory for recovery"); *City of Dover v. U.S. EPA*, 40 F. Supp. 3d 1, 7 (D.D.C. 2013) (reopening the judgment "for the limited purpose of allowing plaintiffs to amend their complaint by adding the APA claims").[3]

## ARGUMENT

The plaintiffs move to amend the complaint after guidance from the Eleventh Circuit on what is necessary to prevail on their Section 2 claim. This is the first time the plaintiffs have sought to amend their complaint in this case. There has been no undue delay on the part of the plaintiffs, who have filed this motion the same day that the Eleventh Circuit's mandate issued. *See Mayes*, 2020 WL

---

[3] The Eleventh Circuit has noted "that there is some tension in our circuit's case law on the proper standard for a court to evaluate a *post-judgment* motion for leave to amend, i.e., whether the standards of Rule 15(a) or the standards of Rules 59(e) and 60(b) apply." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1249 (11th Cir. 2023). Plaintiffs here do not need relief from the judgment under Rule 59(e) or Rule 60(b) because the Eleventh Circuit has reversed the judgment. Even so, Plaintiffs can meet the standard under Rule 59(e) and Rule 60(b)(1) because, as noted by Judge Branch, the judgment was based on "an error of law" regarding the first *Gingles* precondition. (ECF 183 at 4 (Branch, J., respecting denial).) Such an error of law warrants relief from the judgment under either Rule 59(e) or Rule 60(b)(1), which would then allow the Court to follow the standard Rule 15(a) analysis. *See MacPhee*, 73 F.4th at 1250 (reiterating that the Eleventh Circuit's earlier holding still applies—a plaintiff can "move for relief under Rules 59(e) or 60(b) on the basis of proposed amendments even after the action is dismissed and final judgment is entered" (cleaned up)).

587112, at *2. And the Secretary will not be prejudiced because the vast majority of issues in the Amended Complaint have already been decided by this Court and remain undisturbed by the Eleventh Circuit's decision. Nor is the amendment futile because it plausibly alleges alternative remedies within the confines of the existing statewide system of electing five PSC members that would redress the racial vote dilution this Court found and pass muster under the Eleventh Circuit's recent opinion.

The Court should exercise its discretion in favor of amendment here for at least three reasons: *first*, the Eleventh Circuit's decision does not disturb any of this Court's factual findings and the vast majority of its legal conclusions; *second*, the plaintiffs can plausibly allege well-established remedies while preserving the statewide, at-large system for PSC elections; and *third*, judicial economy weighs in favor of adjudicating these issues now. Granting leave to amend would allow the plaintiffs to pursue their meritorious claims and remedy the racial vote dilution already found by this Court—a fact left undisturbed by the Eleventh Circuit's ruling.

As explained by Judge Rosenbaum, the Eleventh Circuit's decision:

> did not disagree with the district court's factual findings. Nor did it disagree with the district court's conclusion that the existing PSC elections result in racial block voting that prevents Black voters in Georgia from electing their preferred candidates to the PSC. Instead,

the panel determined that Plaintiffs' challenge cannot success because their proposed remedy—a single-member districted election—is not the same as the State's existing electoral system.

(ECF 183 at 26 (Rosenbaum, J., dissenting from denial of rehearing en banc).) She is right. The vast majority of this Court's findings on the core issues in this case remain untouched by the Eleventh Circuit's narrow reversal, including: the first *Gingles* precondition as traditionally understood (Black voters are sufficiently large and geographically compact to constitute a majority in a reasonably configured district); the second *Gingles* precondition (Black voters are politically cohesive); the third *Gingles* precondition (the White majority votes sufficiently as a bloc to defeat the Black voters' preferred candidate); and the totality-of-the-circumstances analysis, which this Court determined weighed decidedly in favor of the plaintiffs. (ECF 151 at 36-54.) These factual findings and conclusions remain intact.

The sole deficiency identified by the Eleventh Circuit, then, is the remedy. Judge Branch summarized the Eleventh Circuit's decision as follows: "On appeal … we held that the district court erred because plaintiffs had failed to propose a viable remedy and could not satisfy the first *Gingles* precondition." (ECF 183 at 4 (Branch, J., respecting denial) (cleaned up) (quoting *Rose*, 87 F.4th at 486).)

Indeed, the Eleventh Circuit faulted the plaintiffs for "offer[ing] only a single, dramatic remedy." (*Id.* at 7 n.6 (quoting *Rose*, 87 F.4th at 475-76).)

But this supposed error is readily cured. In fact, the plaintiffs' Amended Complaint proposes several viable remedies that could satisfy the first *Gingles* precondition as described by the Eleventh Circuit in *Rose*, 87 F.4th at 485-86. More specifically, the Amended Complaint proposes alternatives that would both remedy the racial vote dilution the plaintiffs already proved at trial while also maintaining statewide, at-large elections for five commissioners—the State's "chosen form of government." (ECF 178 at 34; *see* Ex. A ¶ 17 ("These remedies include, but are not limited to, cumulative voting, limited voting, and ranked-choice or single transferable voting, all while retaining the statewide method of election for five Public Service Commissioners.").) The plaintiffs' basis for the suit, and this Court's factual findings, remain the same. All the Amended Complaint seeks to add is a viable remedy that conforms to the Eleventh Circuit's opinion.

This is precisely the type of situation where courts exercise their discretion to allow leave to amend. *See* Wright, Miller & Kane § 1489; *Foman*, 371 U.S. at 182 (allowing amendment after judgment to state an alternative theory of recovery). The Amended Complaint is consistent with the Eleventh Circuit's

ruling, *see Jones*, 108 F.2d at 125, and merely proposes alternative remedies, *see Foman*, 371 U.S. at 182 (allowing amendment after judgment to state an alternative theory of recovery). Granting leave to amend allows the plaintiffs to cure the deficiency identified by the Eleventh Circuit and pursue their otherwise meritorious claims.

Additionally, granting leave to amend would serve the interests of judicial economy. If the Court denies leave to amend, another Black voter in Georgia could file suit raising the same claims the current plaintiffs have here, with the addition of alternative remedies that satisfy the Eleventh Circuit's interpretation of the first *Gingles* precondition. That case would likely be reassigned to this Court as a related case, and this Court would have to adjudicate those claims from the beginning. Here, the Court has the benefit of a complete, developed record and the Court has largely completed the fact-finding inquiry. All that remains is determining whether a statewide remedy is viable. Granting leave to amend would allow the Court to rule on this remedial issue without the risk of starting the entire litigation over again.

The path forward post-amendment would be relatively straightforward. The parties could engage in limited discovery on an expedited basis to develop the evidence concerning the viability of the plaintiffs' proposed alternative remedies.

The Court could then reopen the trial record for the limited purpose of assessing the viability of such alternative remedies, to the extent necessary to comply with the Eleventh Circuit's ruling. Should the Court be satisfied that such alternatives could be implemented, it could re-enter judgment for plaintiffs, reinstate the permanent injunction against the existing method of election, and once again give the Georgia legislature an opportunity to devise a remedy that would comply with Section 2.

## CONCLUSION

The Court should grant leave to file the attached Amended Complaint and direct the Secretary to file an answer within 21 days thereafter, if not earlier.

Dated: July 18, 2024

**THE LAW OFFICE OF BRYAN L. SELLS, LLC**

/s/ *Bryan L. Sells*
Bryan L. Sells (GA #635562)
P.O. Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
bryan@bryansellslaw.com

**BARTLIT BECK LLP**
Nicolas L. Martinez (*pro hac vice*)
Katerina Kokkas (*pro hac vice* pending)
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
nicolas.martinez@bartlitbeck.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), NDGa, the undersigned hereby certifies that the foregoing document has been prepared in Times New Roman 14, a font and type selection approved by the Court in LR 5.1(B), NDGa.

*/s/ Bryan L. Sells*
Bryan L. Sells
