# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RICHARD ROSE, *et al.*,<br><br>    *Plaintiffs*,<br><br>      v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia,<br><br>    *Defendant*. | Civil Action No. 1:20-cv-02921-SDG |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT

## INTRODUCTION

Plaintiffs chose a theory for this case, litigated it up to the U.S. Supreme Court, and lost. Rather than accept that outcome, they now ask this Court to start this case over again. There is no basis to grant such a request, especially on these allegations, and the Court should deny Plaintiffs' latest effort to continue this litigation. Plaintiffs' motion was filed under rules that do not apply and is based on precedent that cannot be squared with this case. Beyond that, the motion is far too late and the blame for this delay rests solely with Plaintiffs and their litigation strategy. At this late hour, the Court has no basis to rescue Plaintiffs from the

choices they made on how to litigate this case through trial and on appeal. Plaintiffs cannot obtain yet another bite at the apple.

This case has already seen years of discovery, substantial motion practice including three motions for summary judgment, a preliminary injunction, a full trial on the merits, an appeal to the Eleventh Circuit, a petition for certiorari to the United States Supreme Court, and consideration of rehearing *en banc* at the Eleventh Circuit. At every turn, the Secretary consistently argued the deficiency of Plaintiffs' proposed remedy under Section 2 of the Voting Rights Act ("VRA"). And at every turn, Plaintiffs insisted their remedy was acceptable. Plaintiffs have made their bed, and now they must lie in it.

Beyond the procedural and substantive deficiencies of Plaintiffs' motion, this Court should not grant the relief requested. Accepting Plaintiffs' invitation would be extremely prejudicial to the Secretary because it would result in a restart of the entire litigation, with motions to dismiss, discovery, and motions for summary judgment before another trial.

Plaintiffs had ample opportunity to make their case and raise the claims they now assert. That opportunity has passed. This Court should deny the motion to amend and not disturb the final judgment entered in this case.

# FACTUAL BACKGROUND

## I.      Procedural history at this Court.

Throughout this case, the Secretary has consistently raised the issue that Plaintiffs' case failed at the first *Gingles* precondition because of a lack of a proper remedy. [Docs. 22-1, 80-1, 143]. In response, Plaintiffs have consistently refused to change their position that swapping from statewide to districted elections was sufficient as a possible remedy.

When this case began, the Secretary moved to dismiss the complaint, arguing in part that the Commission's statewide elections were not subject to Section 2 because there was no viable remedy this Court could impose. [Doc. 22-1 at 16–19]. At the argument on that motion, Plaintiffs clearly indicated they were not challenging the residency or numbered-post requirements of the election system or, indeed, any other aspect of the Commission's method of election beside its statewide nature. [Doc. 35 at 20:21–21:21]. This Court ultimately denied the Secretary's motion, holding that even if the argument eventually had merit, it was insufficient to dismiss the case "at its inception." [Doc. 36 at 22].

After discovery, the Secretary's motion for summary judgment again argued that a change from statewide elections for a statewide commission (as required by Georgia's constitution) would be a change in the form of government, which is not a viable Section 2 remedy. [Doc. 80-1 at 15–21]. While this Court

granted summary judgment to Plaintiffs on the first *Gingles* precondition, it reserved issues related to the State's interests in the statewide system for trial. [Doc. 97 at 16–17, 27].

At trial, the Secretary again raised the issue of remedy, arguing that there was no evidence of a remedy the Court could order. [Doc. 143, Tr. at 835:4–837:20]. In its order following the trial, this Court found a violation of Section 2, based in part on the conclusion that Plaintiffs had shown a viable remedy. [Doc. 151 at 35, 56–60]. On the remaining elements, this Court determined that two of the Senate factors weighed most heavily in Plaintiffs' favor. [Doc. 151 at 36]. The remaining factors were a mixed bag: this Court found that there was a history of official discrimination in Georgia, that Black voters suffered socioeconomic deficits, and that the Commission elections use supposedly anti-minority devices such as majority-vote requirements. *Id.* at 41–51. But it also found that there were no problems with slating minority candidates, that elections were not characterized by racial appeals, and that there was no evidence of a lack of responsiveness by elected officials. *Id.* The Court also found that the policy justification for Georgia's statewide system was "tenuous." *Id.* at 51–54. Following that order, the Secretary appealed.

## II.     Procedural history at the Eleventh Circuit.

After filing the appeal, the Secretary sought a stay of this Court's order enjoining the 2022 elections on the traditional stay factors and not on the *Purcell* Principle.[1] After the Eleventh Circuit granted a stay based on *Purcell* only, *Rose v. Sec'y of State of Georgia*, No. 22-12593, 2022 WL 3572823 at *6 (11th Cir. Aug. 12, 2022), the U.S. Supreme Court reversed, *Rose v. Raffensperger*, 143 S. Ct. 58 (2022). By the time the Supreme Court order was issued, the Secretary had arrived at the deadline for removing the PSC contests from the 2022 election and ceased efforts to stay the cancellation of the elections despite the Eleventh Circuit's invitation to re-apply for a stay. *See Rose v. Secretary of State of Georgia*, 87 F.4th 469, 478–79 (11th Cir. 2023). Consistent with this Court's order, the 2022 PSC general elections were removed from the ballot and did not occur.

The Eleventh Circuit ultimately reversed this Court's post-trial order in November 2023. *Rose*, 87 F.4th at 469. In reaching its decision, the Eleventh Circuit disagreed with the Court's finding of vote dilution because the first *Gingles* precondition was not met. *Id*. That decision never made it past the first *Gingles* precondition, and did not consider the Secretary's arguments on appeal related to

---

[1] The *Purcell* Principle adds elements to a request for a stay involving elections and requires district courts to not enjoin state election laws close to an election. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022).

the correctness of this Court's finding of racial polarization or the totality of the circumstances. *Id.* at 479 n.11; *see also Rose v. Sec'y of State of Ga.*, No. 22-12593, 2024 U.S. App. LEXIS 16841, at *5–6 (11th Cir. July 10, 2024) (Branch, J., respecting the denial of rehearing *en banc*). The panel specifically went "no further than the first *Gingles* precondition as interpreted by binding Eleventh Circuit precedent." 87 F.4th at 485. Also in that decision, the Eleventh Circuit recognized that Georgia has chosen a statewide election system for the PSC and it did so for a variety of race-neutral reasons. *Id.* at 484.

Following the decision, Plaintiffs petitioned for certiorari at the U.S. Supreme Court and a judge on the Eleventh Circuit withheld issuance of the mandate, so this Court's injunction remained in place. 11th Cir. Doc. 65. The Eleventh Circuit *sua sponte* lifted this Court's injunction on April 16, 2024. 11th Cir. Doc. 68. The Supreme Court later denied the petition for certiorari. *Rose v. Raffensperger*, No. 23-1060, 2024 WL 3089563, at *1 (U.S. June 24, 2024).

The mandate issued on July 18, 2024, after the Eleventh Circuit denied hearing the appeal *en banc* in an 8-3 vote. [Doc. 190]; *Rose*, 2024 U.S. App. LEXIS 16841, at *2. Plaintiffs' motion immediately followed the issuance of the mandate. On July 22, 2024, this Court made the Eleventh Circuit's mandate the judgment in this case. [Doc. 193].

### III. Election processes and the legislative changes.

As the beginning of the 2024 election process approached, this Court's injunction prohibiting elections for PSC remained in place.[2] Qualifying for statewide offices took place on March 4–8, 2024 and did not include any PSC races because this Court's injunction remained in effect. *See* O.C.G.A. § 21-2-132(d). By the time the Eleventh Circuit lifted the injunction on April 16, 2024, 11th Cir. Doc. 68, primary ballots had already been sent to overseas (O.C.G.A. § 21-2-384(a)) and domestic voters (O.C.G.A. § 21-2-384(a)(2)) and early voting for the general primary was set to begin in less than two weeks. O.C.G.A. § 21-2-385(d)(1).

Because the primary was already underway, and Georgia law requires a special primary election for partisan offices prior to a special general election, it was not possible to conduct elections for PSC in the 2024 election cycle after the Eleventh Circuit lifted the stay in April. O.C.G.A. § 21-2-540. Recognizing the disruptive effect this case had on the rhythm of Commission elections, the Georgia General Assembly passed legislation during the 2024 regular legislative session

---

[2] Plaintiffs continue to argue in their motion that "[o]nly one Black person has ever been elected to the Commission in its almost 150-year history," [Doc. 189 at 4], but ignore the fact it was their efforts in this case that led to the cancellation of the 2022 PSC District 3 election after the primaries took place, when both the Republican and Democratic nominees were Black individuals. As a result, the winner of the general election (if it had been held) would have resulted in a Black person elected to the Commission regardless of which candidate succeeded.

setting a new schedule to re-stagger elections and ensure the state's policies of both

statewide elections and staggered elections are followed. *See* 2024 Ga. Laws Act

380 (HB 1312), attached as Ex. A. To address the holdover nature of the

incumbents, the legislature chose to incur the significant cost of a statewide special

election in 2025, to ensure that all PSC elections are back on their normal six-year

tracks by 2028.[3] *Id*. at § 2.

## ARGUMENT AND CITATION OF AUTHORITY

The entire argument advanced by Plaintiffs in their motion is based on a

misreading of the federal rules and associated legal precedent. To the extent they

claim that this Court "should freely give leave" to amend their Complaint under

Rule 15(a) of the Federal Rules of Civil Procedure, [Doc. 189 at 10], they are

mistaken. That rule does not apply here. By its very terms, Rule 15(a) applies only

to "Amendments Before Trial." Fed. R. Civ. P. 15(a). This case is obviously well

beyond that stage now.

Possibly recognizing this problem, Plaintiffs cite a slew of cases allowing

amendment after a *judgment* by the court. But while a trial results in a final

judgment, not all final judgments occur after a trial. Yet not one of the cases cited

---

[3] As this Court is aware, one of the Plaintiffs in this case has filed a separate lawsuit
challenging the legislative plan for PSC elections. *McCorkle v. Raffensperger*, Case
No. 1:24-cv-03137-WMR (N.D. Ga.).

in support of Plaintiffs' motion deal with an effort to amend pleadings after *trial.* This should end the inquiry. But even if Plaintiffs look to Rule 15(b), which expressly concerns post-*trial* amendment, it offers them no help.

On review of the motion, it is difficult to say whether Plaintiffs intended to amend under Rule 15(a) or Rule 15(b).[4] But the result is the same regardless of which subparagraph is used. Even assuming Plaintiffs properly invoked Rule 15(b), the limited circumstances upon which a party may amend their pleadings under that provision do not apply here.

If Plaintiffs could cobble together some procedural mechanism to amend their complaint, the proposed change to their first *Gingles* precondition allegation would in many respects restart a trial that has already occurred. This Motion comes far too late in the game to be seriously entertained by this Court. Although Plaintiffs claim "[t]here has been no undue delay on the part of the plaintiffs" in bringing this motion, [Doc. 189, p. 11], they have been on notice that their proposed remedy was insufficient since the day the Secretary filed his motion to dismiss four years ago. But they have consistently refused to raise this issue.

---

[4] Plaintiffs' cited cases are all pre-trial Rule 15(a) motions. But in the very first sentence of their motion, Plaintiffs make a singular reference Fed. R. Civ. P. 15(b) as well. *See* [Doc. 189, p. 1] ("Pursuant to Rules 15(a) and (b) of the Federal Rules of Civil Procedure, Plaintiffs Brionté McCorkle, Wanda Mosley, Richard Rose and James 'Major' Woodall respectfully move this Court for leave to amend their Complaint.").

## I.    Rule 15(a) is not available to Plaintiffs following a full trial on the merits.

Plaintiffs confuse the ability to amend pleadings post-*judgment* under Rule 15(a) with the ability to amend post-*trial*, which is exclusively governed by Rule 15(b). According to Plaintiffs, courts have "allowed leave to amend post-judgment when the amendment simply pleads an alternative theory of recovery." [Doc. 189, p. 11] (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). That's true enough, but Plaintiffs cannot point to a single case supporting their theory of using Rule 15(a) to amend after *trial*. Instead, they offer six cases decided under Rule 15(a) that occurred well before the trial-phase of litigation. Three[5] were amended following the grant of motion to dismiss, two[6] followed a summary judgment ruling, and one[7] involved a default judgment. None involved a ruling after trial.

To be sure, these cases all involved an amendment to pleadings after a judgment issued from the court. And the amendments in those cases were permitted because Rule 15(a) embodies the principle that a plaintiff "ought to be afforded an opportunity to test his claim on the merits." *Forman,* 371 U.S. at 182.

---

[5] *Foman v. Davis,* 371 U.S. 178 (1962); *City of Dover v. U.S. EPA,* 40 F. Supp. 3d 1 (D. D.C. 2013); *Scottsdale Ins. Co. v. Wood,* No. 1:22-cv-03217-LMM, 2023 WL 3690433 (N.D. Ga. Mar. 30, 2023).

[6] *Campbell v. Emory Clinic,* 166 F.3d 1157 (11th Cir. 1999); *Jones v. St. Paul Fire & Marine Ins. Co.,* 108 F.2d 123 (5th Cir. 1939).

[7] *Mayes v. 490 Habitat, Inc.,* No. 18-cv-1427 (SJF), 2020 WL 587112 (E.D. N.Y. Feb. 6, 2020).

But a trial *is* a test of a claim on the merits. And where, as here, "the pleading stage is over, the provisions of paragraph (b) [of Rule 15] become applicable." *Hart v. Knox County,* 79 F. Supp. 654, 658 (E.D. Tenn. 1948). Plaintiffs noticeably omitted any reference to caselaw involving Fed. R. Civ. P. 15(b), and that is probably for good reason: it does not help them.

II.     **Plaintiffs cannot use Rule 15(b) to amend their complaint when the Secretary gave no express or implied consent at trial related to the proposed amendment.**

Given the lack of support under Rule 15 (a), Plaintiffs may still claim their motion is also brought under Rule 15(b). By its very terms, Rule 15(b) governs "Amendments During and After Trial," and it has two parts. Fed. R. Civ. P. 15(b). Part 1 relates to amending a complaint during a trial when "a party objects that evidence is not within the issues raised in the pleadings." *Id.* at (b)(1). With trial in this case having concluded more than two years ago, that provision is not at issue here. Part 2 concerns amending after trial "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent." *Id.* at (b)(2). In those circumstances, the rule instructs that the issue "must be treated in all respects as if raised in the pleadings." *Id.* The purpose of permitting amendment, then, is "to conform [the pleadings] to the evidence and raise an unpleaded issue." *Id.* Having moved past a full trial on the merits *and* an exceedingly robust appellate track, culminating in the issuance of an appellate mandate adopted by this Court, [Doc.

193], this action can only be amended via subpart (b) of Rule 15. But that standard is far less accommodating than that of Rule 15(a), and Plaintiffs cannot satisfy it.

"[A]mendments [under Rule 15(b)] have the specific purpose of conforming the pleadings to issues raised by express or implied consent during the trial." *Hart*, 79 F. Supp. at 658; *see also* Fed. R. Civ. P. 15(b). Plaintiffs make no reference in their Motion to any express or implied consent given by the Secretary, nor could they. As for express consent, the record is devoid of any alternative remedies proposed by Plaintiffs. To the contrary, Plaintiffs refused any such alternative approach despite the Secretary's repeated insistence that their proposed remedy was not permissible under this Circuit's precedent.

Nearly four years ago, at the hearing on the Secretary's motion to dismiss, this Court inquired with Plaintiffs' counsel as to the nature and scope of the relief sought. The response was unequivocal: "I want to be clear that we're challenging the at-large method of electing members of the Public Service Commission." [Doc. 35, Tr. at 21:2–3]. And although this characterization by Plaintiffs occurred at the outset of the litigation, nothing changed as the case moved through discovery and toward trial. Indeed, the parties' Joint Pre-Trial Order put the issue before the Court just as plainly: "Plaintiffs… challenge **the at-large method** of election for Georgia's five member Public Service Commission on the grounds that it dilutes Black voting strength in violation of Section 2." [Doc. 121-1 at 2] (emphasis added).

This case has only ever been about one thing: the statewide method of electing PSC Commissioners.

With express consent firmly out of reach, Plaintiffs must look to implied consent. But they can find no toehold there, either. By Plaintiffs' own admission, the trial record would need to be reopened to consider the alternative remedies they now propose. [Doc. 189 at 16]. Not only that, but Plaintiffs also admit that *discovery* would need to be reopened. *Id.* at 15. This course is not at all contemplated by Rule 15(b). Instead, "[t]he effect of the amendment [Plaintiffs] propose would be not to conform the pleadings to a judgment they have won, ***but to jeopardize and perhaps to overthrow a judgment they have lost***." *Hart,* 79 F. Supp. at 658 (emphasis added). But the "prime purpose" of Rule 15(b) is "to avoid the necessity of new trials because of procedural irregularities, not to set judgments aside and make new trials necessary." *Id.* Thus, to permit Plaintiffs to abuse Rule 15 in the way their motion advances would allow them to "keep a case in court indefinitely, trying one theory of recovery [ ] after another, in the hope of finally hitting upon a successful one." *Id.* And further amendments are exactly what could—and likely would—occur here if Plaintiffs were permitted to amend now.

If Plaintiffs are permitted to amend their complaint but are ultimately unsuccessful, nothing stands in their way of seeking leave to amend once again

under their interpretation of Rule 15. And the proposed Amended Complaint appears to leave that door open by saying that their newly proposed "remedies include, **_but are not limited to,_** cumulative voting, limited voting, and ranked-choice or single transferrable voting…" [Doc. 189-2, ¶ 17] (emphasis added). Put differently, there are virtually unlimited potential remedies a plaintiff could dream up. And maybe Plaintiffs will conjure up one at a future date. This would allow Plaintiffs to continue coming back to the well for one more drink, "trying one theory of recovery [] after another, in the hope of finally hitting upon a successful one." *Hart,* 79 F. Supp. at 658. Rule 15 cannot be used so cavalierly by Plaintiffs to subvert the judgments of the courts.

### III. Plaintiffs' proposed amendment goes well beyond merely swapping out a remedy and they have unduly delayed in bringing it.

If this Court nevertheless was inclined to explore granting Plaintiffs leave to amend the Complaint on an equitable basis through some other procedural mechanism, it would find their cause wanting. First, Plaintiffs oversimplify the extent of what they're asking this Court to do, saying, "[a]ll the Amended Complaint seeks to add is a viable remedy that conforms to the Eleventh Circuit's opinion." [Doc. 189 at 14]. But this disregards the unique nature of Section 2 claims

where the remedy is intertwined with the merits.[8] As the Eleventh Circuit established thirty years ago, "the issue of remedy is part of the plaintiff's prima facie case in section 2 vote dilution cases." *Nipper v. Smith,* 39 F. 3d 1494, 1530 (11th Cir. 1994). That complicates things, because under Plaintiffs' proposal, this Court would be required to reconsider the newly proposed remedies within the context of both the first *Gingles* precondition and the fact-intensive totality-of-circumstances analysis.

For example, not only would this Court be required to determine under the first *Gingles* precondition whether Plaintiffs have now finally advanced a viable alternative election scheme within the context of Georgia's statewide PSC elections, but it would also have to consider the state's interests in uniform voting

---

[8] Further, it is not a foregone conclusion that the new remedies Plaintiffs propose can be used to prove the first *Gingles* precondition in the Eleventh Circuit. While there are situations in the Eleventh Circuit where district court have approved remedies besides single-member district plans, that is not typical and have all apparently been consent decrees or agreements by jurisdictions to accept alternative methods of election. *See*, *e.g.*, *Ala. State Conference of the NAACP v. City of Pleasant Grove, Ala.*, Civil Action No. 2:18-cv-02056-LSC, 2019 U.S. Dist. LEXIS 179206, at *2-3 (N.D. Ala. Oct. 11, 2019) (cumulative voting under consent decree); *United States v. City of Calera*, No. CV-08-BE-1982-S, 2009 U.S. Dist. LEXIS 143515, at *1 (N.D. Ala. Oct. 23, 2009) (limited voting under consent decree); *Dillard v. Crenshaw Cty.*, 748 F. Supp. 819, 824 (M.D. Ala. 1990) (limited voting under settlement agreement); *Dillard v. Chilton Cty. Bd. of Educ.*, 699 F. Supp. 870, 871 (M.D. Ala. 1988) (cumulative voting under settlement agreement); *Dillard v. Town of Cuba*, 708 F. Supp. 1244, 1245 (M.D. Ala. 1988) (limited voting under settlement agreement).

practices under the Senate Factors, among other things. This would require additional expert statistical and historical evidence and likely include the addition of new lay witness testimony as well. In other words, Plaintiffs' proposed amendment wouldn't merely swap one remedy for another. It would restart the litigation altogether.

On top of this, even under the most generous standard, "granting leave to amend is not automatic." *Scottsdale Ins. Co.*, 2023 U.S. Dist. LEXIS 93375 at *3. And "in the post-judgment setting," courts must "take into consideration the competing interests of protecting the finality of judgments and the expeditious termination of litigation." *Mayes,* 2020 U.S. Dist. LEXIS 21728 at *3. Based on their conduct to date, and the inevitable consequences of granting their Motion, these considerations argue strongly against allowing Plaintiffs leave to amend at this late hour.

Plaintiffs attempt to bolster their case for amendment by mischaracterizing the timeline of events, claiming "[t]here has been no undue delay on the part of the plaintiffs, who have filed this motion the same day the Eleventh Circuit's mandate issued." [Doc. 189 at 11]. But that misses the point. Plaintiffs are not suddenly on notice that their initially proposed relief is deficient. That occurred nearly four years ago when the Secretary filed his motion to dismiss:

> While Plaintiffs wish that elections for Public Service Commission would be conducted by districts instead of statewide, they ask for

> more than just a change in method of election in a county government. Instead, they ask this Court to "force on the states a new model of government," *Nipper v. Smith*, 39 F.3d 1494, 1531 (11th Cir. 1994), by fundamentally altering the nature that a sovereign state has set up its constitutional commissions to govern utilities.

[Doc. 22-1 at 11]. In no uncertain terms, the Secretary put Plaintiffs on notice of their remedial shortcoming at least by August 14, 2020. And that was well before the Secretary even filed an answer. Had Plaintiffs opted to amend then, they could have done so *as a matter of right* under Rule 15(a). But they declined. As their counsel put it: this case has always been about "challenging the at-large method of electing members of the Public Service Commission." [Doc. 35 at Tr. 21:2-3.] That was the litigation strategy at the outset of this case, and it remained so until now.

The conduct of Plaintiffs in delaying to bring this amendment is precisely kind of "undue delay, bad faith, or dilatory motive on the part of the movant" that removes a motion to amend from even the most liberal and accommodating standards. *Foman,* 371 U.S at 182. Plaintiffs have repeatedly brushed aside every opportunity to amend their pleadings. This Court should not allow them to do so only now that reality has set in, and their case has been definitively decided against them.[9]

---

[9] Plaintiffs make a passing reference to Rules 59 and 60, mistakenly claiming they can succeed using these extraordinary avenues of relief because "the judgment

## IV. Allowing Plaintiffs to amend would work a significant prejudice to the Secretary.

If, despite all the foregoing reasons to deny, this Court concludes Plaintiffs' motion is permitted and there are issues that can be heard, it opens the door to this case starting all over again. Far from the simple approach Plaintiffs seem to envision, their proposed amendment would require significant effort by the Secretary and the Court and significant prejudice to the Secretary. That provides an independent basis for denial under this Court's discretion. *Doe v. Miami-Dade Cty.*, 974 F.3d 1333, 1340-41 (11th Cir. 2020).

If Plaintiffs are permitted to amend, this case will essentially restart. This Court can reasonably expect a new motion to dismiss, raising defenses such as the lack of a private right of action under Section 2. *See Ark. State Conference NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1207 (8th Cir. 2023). This Court could also reasonably expect to have to weigh relevant Eleventh Circuit precedent involving

---

was made on an error of law under the first *Gingles* precondition." [Doc. 189, p. 11 n.3]. But this case does not involve a remand by the Eleventh Circuit that required additional consideration by this Court. This was a reversal and the issuance of mandate, which this Court *fully* adopted, making the judgment of the Eleventh Circuit its own judgment. *See generally* [Doc. 193]. Accordingly, there is nothing for this Court to amend even if it wanted to: "[A] district court cannot amend, alter, refuse to apply an appellate court's mandate simply because an attorney persuades the court that the decision giving rise to the mandate is wrong, misguided, or unjust." *Winn Dixie Stores, Inc. v. Dolgencorp, LLC,* 881 F. 3d 835, 844 (11th Cir. 2018).

the use of cumulative and limited voting as possible methods of proving the first *Gingles* precondition.[10]

If that motion to dismiss is denied, at least expert discovery would be required on the likelihood of the proposed new remedies to function for Black voters in Georgia. Further, this Court must again grapple with questions of how to "disentangle race from politics" in light of continuing developments in the law. *Alexander v. S.C. State Conference of the NAACP*, 144 S. Ct. 1221, 1235 (2024) (quoting *Cooper v. Harris*, 581 U.S. 285, 308 (2017)). That would require additional motions for summary judgment.

Finally, if disputed facts remain, this Court could reasonably expect an additional trial on the questions of the feasibility and state interests in the new proposed remedies from Plaintiffs. And then, even if this Court were to find for Plaintiffs again and were right about the first *Gingles* precondition, the Eleventh Circuit would then have the first opportunity to consider the race/politics questions contained in the second and third *Gingles* preconditions and this Court's application of the totality of the circumstances. In other words, Plaintiffs seek to start this case anew—which they should not be permitted to do after the Eleventh Circuit definitively ended it.

---

[10] *See* n.7 above. At the very least, the feasibility of such a remedy would have to be considered early in the re-started process if allowed.

## CONCLUSION

Plaintiffs lost this case. Rather than accept that outcome, they now ask this Court to let them try again using arguments that they could have raised years ago. Further, Plaintiffs' motion is not a proper Rule 15 motion and not supported by a sufficient basis to be a Rule 59 or 60 motion. But even if it was, there is no basis for this Court to grant it. The motion would work significant prejudice to the Secretary and this Court should not utilize its limited judicial resources to hear the entire case again.

Respectfully submitted this 1st day of August, 2024.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Elizabeth T. Young
Senior Assistant Attorney General
Georgia Bar No. 707725
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane F. LaRoss

Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336–7249

*Counsel for Defendant Secretary of State Brad Raffensperger*

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Response Brief has been prepared in Book Antiqua 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson