# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RICHARD ROSE et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, <br><br> Defendant. | Civil Action No. 1:20-cv-02921-SDG <br><br> **Oral Argument Requested** |

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT AND MOTION FOR RELIEF UNDER RULES 59 AND 60**

The Secretary's response briefs read like a description of a different case. But all his bluster about the plaintiffs' having "lost" and the case being "over" cannot erase what everyone knows happened in this Court. To recap: the plaintiffs defeated the Secretary's motion to dismiss, the plaintiffs won partial summary judgment on the three traditional *Gingles* preconditions, the plaintiffs defeated the Secretary's motion for summary judgment, and the plaintiffs won a trial on liability so convincingly that this Court was "compelled" to rule in their favor on the merits (ECF 151 at 63).

That's because the plaintiffs have a strong case. They should be allowed the opportunity to present their alternative proposed remedies to this Court, consistent with the Eleventh Circuit's ruling on a narrow legal issue that has no impact on nearly all of this Court's careful factual findings. Granting the plaintiffs' motions would not, as the Secretary claims, require the Court to restart the case. But denying their motions would. Were the Court to deny relief, nothing would stop another group of Black voters from copying the plaintiffs' Amended Complaint and refiling the same lawsuit. Here, in contrast, the Court already has the benefit of its years of work and prior factual findings. All that would remain is adjudicating a single remedial issue. The narrow path forward is easy to navigate.

The balance of the Secretary's response is dedicated to attacking the plaintiffs for not amending earlier in the case (when there was no reason to do so) and attacking the plaintiffs' procedural mechanism for doing so now. Neither argument is persuasive. The plaintiffs have not delayed in bringing their amendment, and an amendment at an earlier stage of the case would have been unnecessary and futile. The plaintiffs have also properly moved under Rule 15(a) and Rules 59 and 60 and easily satisfy those liberal standards for relief where, as here, the plaintiffs seek leave to amend *for the first time*. The Court should grant the plaintiffs' motions.

**ARGUMENT**

I. **Granting relief would be most efficient.**

The most efficient, least prejudicial way for this Court to proceed would be to grant relief to the plaintiffs. As the plaintiffs have explained, the Eleventh Circuit's ruling on a narrow remedial issue did not disturb the vast majority of the factual findings and legal conclusions contained in this Court's 64-page decision on liability. (*See* ECF 189 at 1–3, 12–13.) Contrary to the Secretary's assertion, there is no need to "relitigate" any of those findings or conclusions. (ECF 199 at 3.)

The only remaining issue to adjudicate in the liability phase is whether any of the plaintiffs' proposed alternative remedies fall "within the confines of the state's chosen model of government" and are therefore "viable." (ECF 178 at 29.) That issue, which the Eleventh Circuit left open, can be resolved expeditiously. The parties can engage in discovery and motion practice on that issue only, and the Court may reopen the trial record for the sole purpose of assessing the viability of the plaintiffs' proposed alternative remedies. (ECF 189 at 15–16.) If the Court were satisfied that any such alternative is viable, it could re-enter judgment for the plaintiffs, reinstate the permanent injunction against the existing method of

election, and once again give the Georgia legislature an opportunity to devise a remedy that would comply with Section 2.

Ignoring that this straightforward path would best serve the interests of judicial economy, the Secretary claims that granting the plaintiffs relief "would result in a restart of the entire litigation." (ECF 196 at 2.) But he has it backwards. Were the Court to deny relief, nothing would stop another Black voter in Georgia from copying the plaintiffs' Amended Complaint and refiling the same lawsuit. Allowing that to happen makes no sense. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599–600 (5th Cir. Nov. 1981) (By refusing post-judgment amendment, "the action would proceed on the basis of the new complaint[,] the functional equivalent of granting the motion to amend. All that is accomplished is that the case is set back on the docket, and disposition of the merits delayed . . . .").

It would also be unjust. The plaintiffs have diligently litigated this case for years. They defeated multiple dispositive motions, prevailed on the merits following a week-long trial, and convinced the Supreme Court to reinstate this Court's permanent injunction for the 2022 election cycle. Jettisoning all that work because of an easily cured pleading technicality would be inequitable. That is especially true where the sole basis for reversal required the Eleventh Circuit, as this Court indicated, to apply a line of judicial cases for the first time ever to "an

4

administrative body with policy-making responsibilities that make it qualitatively different than courts." (ECF 151 at 54.) That the Eleventh Circuit would make that leap was hardly foreordained. Rather than throw out its years of hard work overseeing this important case, this Court should allow the parties to litigate the one narrow issue the Eleventh Circuit left open.[1]

## II. The plaintiffs have been diligent in bringing their motions.

There has been no undue delay here. The plaintiffs filed their motion to amend literally moments after it became necessary—when the Eleventh Circuit issued its mandate reversing this Court's judgment in the plaintiffs' favor because of an error of law. A party is "free on such a reversal to introduce other evidence and to present by amendment new issues, if not inconsistent with what the appellate court had adjudged." *Jones v. St. Paul Fire & Marine Ins. Co.*, 108 F.2d 123, 125 (5th Cir. 1939) (permitting a post-trial amendment ten days after the mandate was filed following a reversal).[2]

---

[1] This Court should not, however, accept the Secretary's invitation to raise new issues or defenses that he has already waived. (*See* ECF 196 at 18 (threatening to file a motion to dismiss raising new "defenses such as the lack of a private right of action under Section 2").)

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

5

Despite the short gap here between the reversal and the amendment, the Secretary claims undue delay because the plaintiffs were "on notice of their remedial shortcoming" since the Secretary filed his motion to dismiss in August 2020 and could have amended their complaint back then. (ECF 196 at 17.) But this argument fails for at least two reasons.

First, the Secretary mischaracterizes his own motion to dismiss. He did not merely argue—contrary to decades of Supreme Court precedent—that the plaintiffs had the burden of proposing a statewide remedy. He argued that any "challenge to the method of electing the PSC is beyond the reach of Section 2." (ECF 22-1 at 18.) He contended that "statewide electoral challenges under Section 2 invite the federal judiciary to intrude upon a state's inherent right to decide its form of government." (*Id.* at 17.) And he urged the Court to "decline to award relief under Section 2 for a challenge predicated upon the federal judiciary usurping the constitutional right of a sovereign state to choose its form of government." (*Id.* at 18.) An amendment like the one the plaintiffs propose now would have been futile if this Court or the Eleventh Circuit had accepted those arguments.

Second, undue delay is not measured from the date on which a defendant puts a plaintiff on notice of its novel legal theories. That is especially true here because this Court *rejected* those theories. Had the Court foreseen the Eleventh

Circuit's ruling, the plaintiffs could have amended years ago. But at the time of the defendants' motion to dismiss, the Eleventh Circuit had not yet applied *Nipper* outside the context of judicial elections, and the plaintiffs proposed what this Court later described as the "standard remedy" in vote-dilution cases: single-member districts. (ECF 151 at 57.) The law was—at best—unclear. It would therefore be unjust to penalize the plaintiffs for a lack of clairvoyance.[3]

When addressing leave to amend under similar circumstances, other courts have noted that "special considerations come into play." *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 361 (2d Cir. 2023). For example, in *Mandala*, the court considered the fact that "[i]t wasn't until [the Second Circuit]'s decision on appeal that it became clear what other types of information might suffice at the pleadings stage." *Id.* at 364. So too here—it was not until the Eleventh Circuit expanded *Nipper* for the first time that it became clear what the plaintiffs are required to plead.

The Fifth Circuit has similarly allowed a plaintiff to amend post-judgment when the plaintiff failed to plead a legal theory based on a reasonable belief that it

---

[3] Even now, the Eleventh Circuit's jurists are sharply divided on the question. (*See* ECF 183 at 29 (Rosenbaum, J., joined by Wilson & Jill Pryor, JJ., dissenting from denial of rehearing en banc) (explaining why the panel's opinion reversing this Court's judgment is "wrong in every way").)

7

was not required. *See Dussouy*, 660 F.2d at 599 ("[W]e think that where the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case, denial of leave to amend is inappropriate."). Based on Eleventh Circuit precedent as it then stood, there was no need for the plaintiffs to plead alternative remedies. The plaintiffs were "justified in thinking them unnecessary." *Id*.

Given this context, there has been no undue delay that might justify denying the plaintiffs' amendment.

### III. Rule 15(a) is the appropriate standard, and the plaintiffs have demonstrated that amendment is appropriate here.

The plaintiffs have moved under the correct procedural rules. In *MacPhee v. MiMedx Group, Inc.*, the Eleventh Circuit made clear that the Rule 15(a) standard applies when a court grants relief from the judgment under Rule 59(e) or Rule 60(b). 73 F.4th 1220, 1250 (11th Cir. 2023). Many other courts across the country follow this practice. *See Vesely v. Armslist LLC*, 762 F.3d 661, 666–67 (7th Cir. 2014) ("it is well settled that after a final judgment, a plaintiff may amend a complaint under Rule 15(a)" after satisfying the requirements of Rule 59(e) or Rule 60(b) (cleaned up)); *United States v. Mask of Ka–Nefer–Nefer*, 752 F.3d 737, 742–43 (8th Cir. 2014) (same)); *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st

8

Cir. 2006); *Ahmed v. Dragovich*, 297 F.3d 201, 207–08 (3d Cir. 2002); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1489 n.1 (3d ed.) (collecting cases).

For the reasons explained in their motion (and above), the plaintiffs easily meet the liberal Rule 15(a) standard. As the Eleventh Circuit has explained, "Rule 15(a)(2) severely restricts a district court's ability to dismiss with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (cleaned up). Where, as here, the plaintiffs have not previously sought leave to amend, the district court "must" give them that opportunity absent extraordinary circumstances not present in this case. *Id.* ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice." (citation omitted)).

Unable to refute that the plaintiffs have satisfied Rule 15(a)'s low bar for leave to amend, the Secretary resorts to a procedural argument: that Rule 15(a) is available only during the pleadings stage before trial. In support of this proposition, the Secretary cites a single case from 1948. (ECF 196 at 10–11 (citing *Hart v. Knox Cnty.*, 79 F. Supp. 654, 658 (E.D. Tenn. 1948)).) But there is no reason for this Court to treat a judgment after trial differently than any other

9

judgment, as more recent cases make clear. The Eleventh Circuit, for example, did not limit its ruling in *MacPhee* to cases only with pre-trial judgments.

Other circuits that have addressed this question have squarely rejected the Secretary's view of Rule 15. *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). Indeed, as the Fourth Circuit observed, a district court may not deny a motion to amend under Rule 15(a) "simply because it has entered judgment against the plaintiff—be it a judgment of dismissal, a summary judgment, or *a judgment after a trial on the merits*." *Id.* (emphasis added). The leading treatise on the Federal Rules has likewise rejected the Secretary's cramped reading of Rule 15(a) because "there is no strong textual basis for this interpretation." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1488 (3d ed.). The plaintiffs, thus, have properly moved to amend under Rule 15.

The plaintiffs have further demonstrated that they are entitled to relief from the judgment under Rule 59(a), Rule 59(e), Rule 60(b)(1), or Rule 60(b)(6). As detailed in the plaintiffs' original motion, Rule 59(a) authorizes a court to grant a new trial "on all or some of the issues . . . for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). And Rule 59(e) authorizes a court to "alter or amend" a judgment

after entry, with considerable discretion in deciding when to do so. (ECF 195 at 2). One of the four basic grounds for granting a motion to alter or amend is a change in controlling law. *See generally*, 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (3d ed.). As for Rule 60, the Court can relieve a party from judgment based on any of the six reasons prescribed, including "mistake, inadvertence, surprise, or excusable neglect" (Fed. R. Civ. P. 60(b)(1)) or for "any other reason that justifies relief" (Fed. R. Civ. P. 60(b)(6)).

Relief under Rules 59 and 60 is warranted here because, as the Eleventh Circuit panel made clear, this Court's original judgment for the plaintiffs was based on "a mistake of law" regarding the first *Gingles* precondition. (ECF 178 at 18–19; *see also* ECF 183 at 4 (Branch, J., respecting denial) (judgment was based on "an error of law").) Alternatively, the Court should grant relief from the judgment under Rule 60(b)(6) because the Eleventh Circuit changed the law by expanding the *Nipper* line of cases and applying it for the first time to elections for an administrative policymaking body like the PSC—a change that neither this Court nor the plaintiffs anticipated.

As the Supreme Court has explained, when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought

11

to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (allowing a post-judgment amendment). That is the case here. The Eleventh Circuit's mandate did not direct this Court to dismiss the action, much less to do so with prejudice. *Cf. United States v. Batmasian*, 66 F.4th 1278, 1283 (11th Cir. 2023) (Branch, J.) ("Accordingly, we vacate the district court's decision and remand with instructions to dismiss Batmasian's expungement motion for lack of subject-matter jurisdiction."); *Hand v. DeSantis*, 946 F.3d 1272, 1275 (11th Cir. 2020) (Branch, J.) ("This case is hereby REMANDED with instructions to DISMISS for mootness."); *Chua v. Ekonomou*, 1 F.4th 948, 957 (11th Cir. 2021) ("[W]e REMAND with instructions to dismiss these claims with prejudice based on judicial immunity."). Nor did this Court's order adopting the mandate purport to do so, as the Secretary suggests. (*See* ECF 199 at 5.)

But to the extent the Court's order might be construed to have that effect, the plaintiffs respectfully submit that it is the product of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The plaintiffs cannot imagine that the Court, which has presided ably over this litigation for years, intended to dismiss this action with prejudice through a one-sentence order that said no such thing, especially when doing so would violate the Eleventh Circuit's command that plaintiffs "must be given *at least one* chance to amend the complaint

before the district court dismisses the action with prejudice." *Garcia*, 48 F.4th at 1220 (citation omitted).

## CONCLUSION

For these reasons, the Court should grant relief from the judgment under Rules 59 or 60, and grant the plaintiffs leave to amend their complaint.

Dated: August 29, 2024

**THE LAW OFFICE OF BRYAN L. SELLS, LLC**

/s/ *Bryan L. Sells*
Bryan L. Sells (GA #635562)
P.O. Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
bryan@bryansellslaw.com

**BARTLIT BECK LLP**
Nicolas L. Martinez (*pro hac vice*)
Katerina Kokkas (*pro hac vice*)
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
nicolas.martinez@bartlitbeck.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), NDGa, the undersigned hereby certifies that the foregoing document has been prepared in Times New Roman 14, a font and type selection approved by the Court in LR 5.1(B), NDGa.

*/s/ Bryan L. Sells*
Bryan L. Sells