**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RICHARD ROSE, *et al.*,<br>    Plaintiffs,<br><br>                v.<br><br>BRAD RAFFENSPERGER, *in his capacity as Secretary of State of the State of Georgia*,<br>    Defendant. | Civil Action No.<br>1:20-cv-02921-SDG |

**OPINION AND ORDER**

After completion of a five-day bench trial, entry of judgment, an appeal, and two petitions for review to the Supreme Court, Plaintiffs now move to amend their complaint [ECF 189] and for relief under Fed. R. Civ. P. 59 and 60 [ECF 195] to seek a new and different remedy for their claim under Section 2 of the Voting Rights Act. For the reasons set forth below, the motions are **DENIED**.

**I.    Applicable Legal Standard**

To begin, the parties dispute the standard of review that applies to Plaintiffs' request—Rule 15, 59, or 60. Rule 15(a)(2) provides that a party may amend its pleading with the Court's leave, which should be granted when justice so requires. In contrast, Rule 59(e) permits a court to alter or amend a judgment based only on newly discovered evidence or manifest errors of law or fact. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Rule 60(b)(1) permits relief from a final judgment

due to mistake, inadvertence, surprise, or excusable neglect. Even under the most lenient standard available—Rule 15(a)—Plaintiffs' proposed amendment fails.[1]

## II.  Background

The procedural history of this case is relevant to understanding the extraordinary nature of Plaintiffs' request and why the Court declines to grant it. Plaintiffs are Black voters registered in the State of Georgia. In July 2020, they filed suit against the Georgia Secretary of State, challenging the state-wide, at-large method of electing members of the Public Service Commission—the body responsible for supervising and regulating common carriers, railroads, and public utilities.[2] To prove their substantive claim and satisfy the *Gingles*'s preconditions, Plaintiffs had to demonstrate a viable remedy. *Nipper v. Smith*, 39 F.3d 1494, 1530–31 (11th Cir. 1994) ("The inquiries into remedy and liability, therefore, cannot be

---

[1] The Court entered the first scheduling order four years ago and discovery started on February 25, 2021. ECF 40. The last day for Plaintiffs to amend was therefore March 29, 2021. LR 7.1(A)(2), NDGa. Given the current posture of the case, then, Plaintiffs would have to show good cause under Rule 16 before they could travel under Rule 15(a). Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The good-cause standard precludes modification of the Court's schedule unless it cannot be met despite the party's diligence. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citing Fed. R. Civ. P. 16 advisory committee's note). Since Plaintiffs cannot succeed even under the permissive standard of Rule 15(a), the Court does not address whether Plaintiffs have shown good cause (they have not), or if Rules 59 or 60 should be applied (they should not).

[2] *See generally* ECF 1.

separated: A district court must determine as part of the *Gingles* threshold inquiry whether it can fashion a permissible remedy in the particular context of the challenged system."). They thus asked the Court to order that the Secretary administer future Commission elections "using a method of election that complies with Section 2 of the Voting Rights Act," *i.e.*, to require the Secretary to employ single-member districts rather than at-large elections.[3]

The Secretary moved to dismiss, arguing (among other things) that Plaintiffs could not state a claim because their proposed remedy was impermissible.[4] Plaintiffs, naturally, disagreed. Not only did they assert that single-member district elections were the proper cure for the alleged Section 2 violation, Plaintiffs argued that such districting was the *required* remedy.[5] They further emphasized that they were only challenging the statewide—*i.e.*, the at-large—nature of Commission elections.[6] After full briefing and argument on the Secretary's motion, the Court concluded that single-member districting was not, as a matter of law, a prohibited remedy.[7] The Court therefore denied the Secretary's motion.

---

[3] *Id.* at 10.

[4] ECF 22-1, at 1. *See also id.* at 16–19.

[5] ECF 23, at 14. *See also id.* at 14–18.

[6] ECF 35, at 20–22.

[7] ECF 36, at 34–42.

Plaintiffs then litigated their case on the theory that the at-large election of Commission members had to be replaced by single-member districting.[8] The Secretary, in turn, consistently objected that Plaintiffs' proposal failed as a matter of law.[9] At summary judgment, Plaintiffs asserted that they had satisfied the *Gingles* preconditions, in part, because Black voters in Georgia were "sufficiently numerous and geographically compact to constitute a majority of the voting-age population in at least one single-member district" (the first precondition).[10] For his part, the Secretary continued to argue that single-member districts were not a viable form of relief.[11] The Court reserved ruling on that issue for trial, noting that its assessment of the proposed remedy required consideration of the totality of the circumstances.[12] After trial, the Court held that single-member districts were appropriate and permissible, and entered a permanent injunction against at-large elections for members of the Commission.[13] The Secretary appealed,[14] and sought

---

[8]  *See, e.g.*, ECF 39, at 1 ¶ 1.

[9]  ECF 56-1, at 2–3, ¶ 3 ("Plaintiffs also seek to alter the method of election of statewide constitutional officers in Georgia. This impinges on the proper role of states and is improper for a federal court to order as a remedy.").

[10] ECF 79, at 3–4, 15–16.

[11] ECF 80-1, at 15–21.

[12] ECF 97, at 16 (citing *Davis v. Chiles*, 139 F.3d 1414, 1419–20 (11th Cir. 1998)). *See generally id.* at 16–24.

[13] ECF 151, at 56–60; ECF 159.

[14] ECF 152.

and was granted a stay of the injunction by the Eleventh Circuit.[15] The stay was then vacated by the Supreme Court (allowing the injunction to take effect).[16]

Despite that loss, the Secretary prevailed on the substance of his appeal.[17] A panel of the Eleventh Circuit concluded that Plaintiffs had failed to propose a viable remedy and thus "failed to satisfy Gingles's first precondition."[18] The Court of Appeals declined to rehear the case en banc,[19] and Plaintiffs' second petition for review by the Supreme Court was denied. 144 S. Ct. 2686, *reh'g denied*, 2024 WL 3851078 (2024). The appellate mandate issued, and this Court adopted it—as undersigned is obligated to do.[20]

## III. Discussion

Plaintiffs now seek leave to amend their Complaint to propose different remedies, such as cumulative voting, limited voting, ranked-choice voting, or single-transferable voting,[21] rather than single-member districting. Despite their characterization of this proposal as an "easy fix" to the "narrow legal question"

---

[15] ECF 160.

[16] ECF 162.

[17] ECF 178.

[18] *Id.* at 18–19.

[19] ECF 183.

[20] ECFs 190, 193.

[21] ECF 189.

ruled on by the Eleventh Circuit,[22] what Plaintiffs are really asking for is a complete redo of this litigation. Plaintiffs' argument ignores that a viable remedy was both a necessary element of establishing liability in the first instance and a significant factor in the Court's totality-of-the-circumstances analysis. By removing the viable remedy from the equation, the Court's analysis is no longer viable either.

Although Rule 15(a) generally favors permitting amendments, leave may be denied when there has been undue delay, where the amendment would result in prejudice to the opposing party, or the proposed amendment is futile. *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008). The Eleventh Circuit has made clear that "[p]rejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (citing *Jameson v. Arrow Co.*, 75 F.3d 1528, 1534 (11th Cir. 1996) (noting that the facts on which the amendment was based were available when the complaints were filed)). This case is well beyond those points. The delay, prejudice, and futility here are more than sufficient grounds on which to deny the relief Plaintiffs seek.

---

[22]   *Id.* at 2–3.

**A.    Delay**

Plaintiffs assert that they did not unduly delay and that this would be the first amendment to the Complaint.[23] As the Secretary notes, however, Plaintiffs have long been on notice that the proposed single-member-district remedy was potentially problematic.[24] The case was not decided at an early stage before the parties had the opportunity to develop their evidence—the Court held a five-day bench trial and issued an extensive opinion on its rulings.[25] Plaintiffs never suggested that any other form of relief might be appropriate until after the Secretary prevailed on appeal.[26]

Having proceeded through trial, an appeal, and the denial of certiorari by the Supreme Court on their chosen remedy of single-member districts, Plaintiffs want to re-litigate a substantive aspect of their cause of action. But the Court "need not allow itself to be imposed upon by the presentation of theories seriatim." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967) ("The facts on which the claim of fraud is based were fully known to Freeman from the outset of the lawsuit and, indeed, were relied on by him, though under a different theory, in his original

---

[23]   *Id.* at 5–8.
[24]   ECF 196, at 9.
[25]   ECF 151.
[26]   ECF 23, at 14; ECF 35, at 27–28.

answer. It was not until that theory was rejected by the trial court—correctly as we have held above—that the amendment was tendered seeking to make out a showing of fraud from those facts."). Parties cannot freely rely on one theory in an attempt to prevail on their claims and then, "should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Id.* at 470. That an entirely new challenge to Georgia's method of electing Commissioners based on different theories and evidence could be brought is of no import. In *this* challenge, Plaintiffs were aware of the possible pitfalls of relying solely on single-member districting as a remedial theory. Dissatisfaction with the results of that decision is not a basis for the Court to grant a do-over.

### B.     Prejudice

Plaintiffs also argue that it would be prejudicial to them for the Court not to allow the proposed amendment because the Eleventh Circuit ruled only on a narrow issue that can be corrected. In their view, the Court need "only" permit new discovery and motion practice related to the newly proposed remedies.[27] But as the Secretary points out, permitting Plaintiffs' amendment would (at a minimum) require reopening both discovery and the trial record,[28] since the Secretary did not have any opportunity to defend against the alternative remedies

---

[27]  *See generally* ECF 200, at 3–5.

[28]  ECF 196, at 13 (citing ECF 189, at 15–16).

Plaintiffs now propose. Section 2 challenges are fact-intensive inquiries that require assessing the totality of the circumstances. The Secretary presented his arguments and prevailed. It would be extremely prejudicial to reopen discovery and retry the case under a theory Plaintiffs could have presented from the outset.

C.   **Futility**

Finally, and perhaps most fundamentally, Plaintiffs' arguments minimize what the Eleventh Circuit actually held in reversing this Court's judgment and ignore that the appellate court's ruling necessarily affected this Court's finding of liability. Proposing a viable remedy is a substantive element of a Section 2 claim. *Nipper*, 39 F.3d at 1530–31. The Eleventh Circuit held that Plaintiffs failed to establish the first *Gingles* precondition, concluding that it was an error of law to hold that single-member districts were a viable remedy to the alleged vote dilution caused by Georgia's method of conducting Commission elections.[29] That conclusion overruled this Court's substantive liability determination.

Without Plaintiffs having established a viable remedy, the Secretary cannot be liable under Section 2. So, the Court cannot leave all its prior determinations in place, exchanging only the originally proposed remedy with a new one. This is not a narrow technical issue—it is a substantive defect in Plaintiffs' case-in-chief. Further, the Court is not entirely convinced that it could pursue Plaintiffs'

---

[29]   ECF 178, at 18–19.

proposed course of action without violating the mandate rule. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018) ("The law of the case doctrine and the mandate rule ban courts from revisiting matters decided expressly or by necessary implication in an earlier appeal of the same case. It has its greatest force when a case is on remand to the district court. . . . A district court when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.") (cleaned up).

### IV.  Conclusion

Plaintiffs' proposed amendment is unduly delayed, inherently prejudicial, and futile. Accordingly, Plaintiffs' motion for leave to amend the complaint [ECF 189] is **DENIED**. Plaintiffs' motion for relief under Rules 59 and 60 [ECF 195] is **DENIED as moot**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 7th day of March, 2025.

Steven D. Grimberg
United States District Judge