**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11233
Non-Argument Calendar
_____

RICHARD ROSE,
  an individual,
BRIONTE MCCORKLE,
  an individual,
WANDA MOSLEY,
  an individual,
JAMES MAJOR WOODALL,

                    *Plaintiffs-Appellants,*

*versus*

SECRETARY OF STATE OF THE STATE OF
GEORGIA,

                    *Defendant-Appellee.*

Case 1:20-cv-02921-SDG   Document 216   Filed 11/25/25   Page 2 of 11
USCA11 Case: 25-11233   Document: 33-1   Date Filed: 11/25/2025   Page: 2 of 9

2                    Opinion of the Court                    25-11233

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02921-SDG

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Four black voters in Georgia brought this suit against the Secretary of State of Georgia (the "Secretary") to challenge Georgia's method of electing members to its Public Service Commission (the "PSC"). The plaintiffs argued that the statewide electoral system for PSC elections unlawfully dilutes black Georgians' votes in violation of Section 2 of the Voting Rights Act (the "VRA"). They won their case after a bench trial before the district court, but after the Secretary appealed to this Court, we reversed and held that the plaintiffs did not have a legally viable theory under Section 2 of the VRA. *Rose v. Sec'y, State of Ga.*, 87 F.4th 469, 486 (11th Cir. 2023). After we reversed the district court, the plaintiffs tried to amend their complaint to plead a new theory of liability and get a second bite at the apple. The district court did not grant the plaintiffs leave to amend, and they appealed. We now review the denial of their motion for leave to amend their complaint. After careful review, we affirm.

## I.    Background

In July 2020, the plaintiffs brought this suit against the Secretary to challenge the "at-large method" of electing commissioners of the PSC. The PSC consists of five members and

is a quasi-legislative and quasi-judicial body that regulates utilities in Georgia.  For example, the PSC administers federal funds for pipeline safety, decides utility rates, and adjudicates rate disputes. Each PSC commissioner represents one of five districts and must be a resident of the district they represent, but candidates are elected by a statewide vote.

The plaintiffs alleged that the PSC election system dilutes the strength of black Georgians' votes and therefore violates Section 2 of the VRA.  The plaintiffs proposed only one remedy, elections within single-member districts, as an alternative to the existing statewide elections.  The parties litigated a motion to dismiss, motions for summary judgment, and motions *in limine*, and each side engaged in extensive fact and expert discovery. Three experts and each PSC commissioner testified at a five-day bench trial.  Following trial, in August 2022, the district court ruled for the plaintiffs and permanently enjoined the Secretary from administering PSC elections using the statewide method.  The Secretary appealed that decision to this Court.

On appeal, we reversed the district court because the plaintiffs' failure to propose a viable remedy meant they could not establish a vote dilution claim under Section 2 of the VRA.  *Id*. at 475, 486.  We explained that a Section 2 claim requires satisfying three "*Gingles*" preconditions derived from *Thornburg v. Gingles*, 478 U.S. 30 (1986).  *Id*. at 475.  We further explained that the first *Gingles* precondition is that "the minority group must be sufficiently large and [geographically] compact to constitute a majority in a

reasonably configured district." *Id.* (quoting *Allen v. Milligan*, U.S. 599 U.S. 1, 18 (2023) (brackets in original)). We reiterated our previous holding that this precondition requires plaintiffs to "offer a satisfactory remedial plan." *Id.* (quoting *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1302 (11th Cir. 2020)) (alterations adopted).

Ultimately, we held that the plaintiffs failed to satisfy the first *Gingles* precondition because they did not offer a satisfactory remedial plan. *Id.* at 480. Because the "plaintiffs offer[ed] only a single, dramatic remedy—transforming a statewide voting system into a single-member districted plan," we reversed. *Id.* at 475, 486. After our decision, there were no remaining claims or alternative theories that were unaddressed. The only action left for the district court to take was to enter a final judgment in favor of the Secretary.

Our mandate issued on July 18, 2024. That same day, the plaintiffs requested leave to amend their complaint in the district court under Rule 15 of the Federal Rules of Civil Procedure. Along with their request for leave to amend, the plaintiffs filed a proposed amended complaint that challenged the existing method of electing members of the PSC and included several new proposed remedies that they argue would satisfy *Gingles*. On July 22, the district court entered judgment by adopting our mandate as its own. The plaintiffs then filed a motion for relief from judgment under Rules 59 and 60(b) of the Federal Rules of Civil Procedure so that they could amend their complaint. The district court denied the plaintiffs' motions because the plaintiffs could not meet the most

25-11233                  Opinion of the Court                        5

lenient of those standards, Rule 15.  The district court determined that the plaintiffs unduly delayed their effort to amend, allowing such an amendment would unduly prejudice the Secretary, and the amendment would be futile.  The plaintiffs appealed.

## II.   Discussion

The plaintiffs argue that, while it is unclear what standard they must meet, they should be permitted to amend their complaint regardless of whether they must satisfy Rule 15(a), Rule 59(e), or Rule 60(b).  The Secretary contends that the plaintiffs should not be permitted to amend their complaint even under Rule 15(a), the most lenient standard of the three rules.

We review the denial of a motion to amend a complaint for an abuse of discretion.  *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).[1]  Even if we assume that Rule 15(a) applies, the district court did not abuse its discretion.

Rule 15(a)(1) allows parties to amend a complaint once as a matter of course if the amendment is made within 21 days after an answer or certain other motions are filed.  Fed. R. Civ. P. 15(a)(1).  That deadline passed in 2021.  Even when that deadline passes, the plaintiffs can still amend a complaint "with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).

---

[1] We also review motions under Rule 59(e) and 60(b) for abuse of discretion. *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007) (Rule 59(e)); *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (Rule 60(b)).

But amending a complaint is "not an automatic right."  *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (quotations omitted). A district court can deny leave to amend if it concludes there was "undue delay," if allowing the amendment would cause "undue prejudice to the opposing party," or if the amendment would be futile.  *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Allowing the plaintiffs to amend their complaint at this stage of litigation would severely prejudice the Secretary, which justifies the district court's denial.  *See id.*; *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (affirming denial of leave to amend because of prejudice to defendant).  After years of litigation that included extensive discovery, summary judgment motions, motions *in limine*, hiring expert witnesses, and a five-day trial, permitting the plaintiffs to amend now would require restarting several aspects of this case and would force the Secretary to bear repetitive litigation costs.

The following examples support the district court's decision by showing the time and resources the Secretary would need to spend if the plaintiffs were allowed to amend their complaint.  First, the district court would need to re-open discovery so that the plaintiffs could develop a record to support their new allegations, which would force the Secretary to spend resources refuting them. The parties would need to take and defend new depositions and possibly retain new experts.  Second, additional motions practice related to the plaintiffs' new legal theories would be necessary, yet

25-11233               Opinion of the Court                7

another required investment by the Secretary.  Third, the parties may need to spend considerable resources to retry the case.[2]  The resulting prejudice to the Secretary would be significant, so the district court had discretion to deny the plaintiffs leave to amend. *See Maynard*, 342 F.3d at 1287 (finding undue prejudice would result from allowing amendment at the end of discovery but before trial).

The plaintiffs cannot overcome the fact that granting leave for them to amend their complaint will prejudice the Secretary, so they point to considerations of judicial economy.  But that general policy concern does not refute the specific prejudice that the Secretary would face, which was a sufficient ground for the district court to deny leave for the plaintiffs to amend.[3]  *Reese*, 527 F.3d at 1263 (holding that a district court can exercise its "inherent power to manage the conduct of litigation" by denying leave to amend a

---

[2] We additionally note that the plaintiffs' proposed amended complaint claims that Georgia's "existing" method of electing members of the PSC violates the VRA.  If the plaintiffs are alleging that the existing method is different from the method used when it first brought this case, the parties would need to litigate how current the district court's three year old factual findings are and whether more timely proof would be required.

[3] The plaintiffs argue that "judicial economy weigh[s] in favor of deciding [issues presented by their amended complaint] in the existing lawsuit rather than in a new one."  The plaintiffs do not specify who would bring this hypothetical new case.  While the plaintiffs are free to file a new suit, they fail to explain how that suit would survive the doctrine of claim preclusion. Nor do the plaintiffs identify others who would bring this hypothetical suit that might not ever be filed.

complaint if it would result in undue prejudice to the opposing party).

Finally, the plaintiffs argue that the Supreme Court's decision in *Pullman-Standard v. Swint* compels a different result—that is wrong. *See* 456 U.S. 273 (1982). Specifically, the plaintiffs argue that the district court was required to grant them leave to amend because of the Supreme Court's instruction that "[w]hen *an appellate court* discerns that a district court has failed to make a finding because of an erroneous view of the law, *the usual rule* is that there should be a remand for further proceedings to permit the trial court to make the missing findings." (quoting *id.* at 291) (emphasis added). That argument fails for two reasons. First, *Pullman-Standard* did not impose a requirement—it merely stated "the usual rule." *Id.* Second, and fatal to plaintiffs' challenge, *Pullman-Standard* provides an instruction to appellate courts, not district courts. In *Pullman-Standard*, an appellate court determined that a district court overlooked relevant evidence, and the Supreme Court clarified that the proper course of action was for the appellate court to remand the case to the district court, not to make its own determination based on the relevant evidence that was ignored. *Id.* at 282–85, 291. That rule of appellate procedure provides no guidance for whether a district court should grant a plaintiff leave to amend a complaint.

### III.    Conclusion

After years of litigation and a finding from this Court that the plaintiffs did not have a viable theory of liability, the plaintiffs

25-11233                Opinion of the Court                9

now want to amend their complaint to allege a new legal theory. Permitting that amendment would unduly prejudice the Secretary. Accordingly, the district court did not abuse its discretion in denying the plaintiffs leave to amend their complaint.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 25, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  25-11233-EE
Case Style:  Richard Rose, et al v. Secretary of State of the State of Georgia
District Court Docket No:  1:20-cv-02921-SDG

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing <u>must</u> include a Certificate of Interested Persons**. <u>See</u> 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, <u>see</u> FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion